*276 OPINION.
Hill :
Petitioner, relying on the contract between Reynard and the Bell Syndicate, contends that the amount received by Reynard from the Syndicate constituted income to Reynard; that it was properly reported by Reynard in its returns and no portion of it was income taxable to him. The respondent’s position is that his determination is correct and can be sustained on either of two grounds — first, that Reynard was a mere dummy and its identity should be ignored, and, second, that since the $104,000 paid by the Syndicate was compensation for the creative efforts of petitioner it is taxable to him under the rule of the decision in Lucas v. Earl, 281 U. S. 111.
The income in question, having been received by Reynard pursuant to its contract with the Bell Syndicate, is taxable to Reynard under the applicable act unless there is a special situation requiring that it be taxed to petitioner. The rule regarding a corporation and its stockholders as separate taxable entities was stated in New Colonial Ice Co. v. Helvering, 292 U. S. 435, as follows:
As a general rule a corporation and its stockholders are deemed separate entities [1] and this is true in respect of tax problems.[2] Of course, the rule is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights.[3] * * *
Here all the contracts regarding the use of the cartoons for syndication purposes and extending over a number of years were between Reynard and the Bell Syndicate. While petitioner signed them, it was in his capacity as president of Reynard and not in his personal capacity. Such other business transactions as Reynard had, involving considerable sums in investments in real estate, stocks, and bonds, were carried on in its name. Federal and state tax returns were filed for *277 it from, the time of its organization. And even before this Board it contested respondent’s determination of its tax liability for the fiscal years ended March 31,1930, and 1931, as appears at 30 B. T. A. 451. In addition its contest of respondent’s determination of its tax liability for the year ended March 31, 1932, is involved in Docket No. 78835. Respondent’s determination there is based on an inclusion in the income of Reynard of a portion of that involved here.
In fact down to the instant proceeding Reynard’s separate identity has been generally respected by petitioner and has been recognized by all who had dealings with it. Respondent’s position in respect to disregarding its separate entity is not entirely consistent with his determination. If Reynard’s identity is to be disregarded for the purpose of including in petitioner’s income the amount it received from the Bell Syndicate, it would seem that it should be disregarded for the purpose of including in petitioner’s income all other items of income received by Reynard as well as its deductions, including security losses. This respondent has not done nor asked in his answer to have done.
Respondent contends that, since the income from the Bell Syndicate contract resulted from the personal efforts of petitioner, it is income of the petitioner within the intendment of the income tax laws, and asks us to find that this was such an exceptional situation as to warrant the disregard of Reynard’s separate identity to that extent. He cites no decision, comparable in facts, and we know of none, in which such action has been taken.
We do not think the facts here warrant disregarding Reynard as a separate entity.
Nor do we think they fall within the purview of the decision in Lucas v. Earl, supra. In that case the question was whether an attorney was taxable for the whole of his salary and fees earned by him in the tax years or only upon one-half, by reason of an agreement with his wife by which his earnings were to be received and owned by them jointly. The court was of the opinion that the case turned upon the construction of the taxing act. It said: “The statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the same when paid from vesting even for a second in the man who earned it.” This was deemed to be the meaning of the statute as to compensation for personal service and the husband who earned the income was held to be subject to the tax. See Blair v. Commissioner, 300 U. S. 5.
Respondent admits that there was no contractual relationship existing between petitioner and the Bell Syndicate and that no assign *278 ment of future earnings was involved in any of the contracts. This being true, we fail tp see where Lucas v. Earl, sufra, has any application. Petitioner produced certain cartoons for Reynard. For these it paid bim a stipulated compensation, which was taxable to the petitioner as, such. For the use of the cartoons for syndication purposes the Bell Syndicate paid Reynard a stipulated minimum amount, which was taxable to Reynard as income arising from the use made by it. of the cartoons.
With respect to the royalties of $9,482.30 paid by R K O, Qeorge Borgfeldt & Co., and Fred A. Wish, Inc., fpr the use in their respective businesses of certain characters created by petitioner, he contends that, having assigned his contracts with those corporations to Rey-nard on April 1, 1932, and thereby having transferred all of his rights under them to Reynard, such rights became its property and the subsequent income therefrom was its income. The parties have not discussed in their briefs the question of petitioner’s right to enter into the contracts in view of the contract he had with Reynard. We therefore assume that he had such right.
It is well settled that an assignment of income does not relieve the assignor of the tax thereon. Lucas v. Earl, supra; Burnet v. Leininger, 285 U. S. 136. But where an income producing property is assigned or transferred the income subsequently arising therefrom is not taxable to the assignor. Blair v. Commissioner, supra; Nelson v. Ferguson, 56 Fed. (2d) 121; certiorari denied, 286 U. S. 565; Hall v. Burnet, 54 Fed. (2d) 443; certiorari denied, 285 U. S. 552; Commissioner v. O'Donnell, 90 Fed, (2d) 907. Riere the rights petitioner had under the contracts with the three corporations constituted property. Cf. Hall v. Burnet, supra. When he transferred the contracts to Reynard these rights became its property and whatever income thereafter arose from them was income to if and not to petitioner. Respondent takes, the position that Lucas v. Earl, supra, is applicable on the ground that this was. an assignment of contract interests, arising out of the performance by petitioner of services in the past. The contracts between petitioner and the three corporations were for the privilege of using certain characters or cartoons in the business of the respective corporations and not for the services of petitioner. So far as the record shows, petitioner has never been in the employment of any of them. But, conceding- that the contracts, were connected with the past services of petitioner, the rule in Lucas v. Earl, supra, would not be applicable, as it applies only to the assignment of future earnings and not to the assignment of .assets resulting from past earnings. Matchette v. Helvering, 81 Fed. (2d) 73; certiorari denied, 298 U. S. 677.
Reviewed by the Board.

Decision will be entered for the petitioner.

 Pullman Car Co. v. Missouri Pacific Ry. Co., 115 U. S. 587, 596-597; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 273; United States v. Delaware L. & W. R. Co., 238 U. S. 516, 527-529; Cannon Mfg. Co. v. Cudahy Co., 267 U. S. 333; Klein v. Board of Supervisors, 282 U. S. 19, 24.

 Klein v. Board of Supervisors, 282 U. S. 19, 24; Dalton v. Bowers, 287 U. S. 404, 410; Burnet v. Clark, 287 U. S. 410, 415; Burnet v. Commonwealth Improvement Co., 287 U. S. 415, 418-420.

 United States v. Lehigh Valley R. Co., 220 U. S. 257. 272-274; Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic Assn., 247 U. S. 490, 500-501; Southern Pacific Co. v. Lowe, 247 U. S. 330, 337-338; Gulf Oil Corp. v. Lewellyn, 248 U. S. 71.