RAYMOND A. VERCIO AND ROSEANNE VERCIO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RAY HAILEY, JR., AND WILMA HAILEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7108–77, 10919–77.     Filed March 31, 1980.

*Paul T. Wright,* for the petitioners.
*Frederick B. Strothman,* for the respondent.

DRENNEN, *Judge:* In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income tax:

---

[9]See, however, *Vercio v. Commissioner, supra.*

| Docket No. | Petitioner | Year | Deficieny | Addition to tax under | |
| | | | | Sec. 6651(a) | Sec. 6653(a)[1] |
| 7108–77 | Ravmond A.Vercio | | | | |
| | and Roseanne Vercio | 1973 | $16,333.45 | $1,454.08 | $864.54I |
| | | 1974 | 21,050.25 | 2,349.03 | 1,277.96 |
| 10919–77 | Rav Hailey, Jr., and | | | | |
| | Wilma Hailey............ | 1974 | 4,500.00 | --- | 225.00 |

The issues for decision are:

(1) Whether conveyances by petitioners of their lifetime services to family trusts established by them were effective to shift the incidence of taxation on amounts representing compensation to them but paid to the trust;

(2) Whether certain income and expense items reported by the trusts should have been included on petitioners' Federal income tax returns under sections 671 through 677;

(3) Whether petitioners are liable for additions to tax under section 6653(a); and

(4) Whether petitioners in docket No. 7108–77 are liable for additions to tax under section 6651(a).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

Ray Hailey, Jr. (Hailey), and Wilma Hailey (Wilma), the petitioners in docket No. 10919–77, are husband and wife, and they resided in Denver, Colo., at the time of the filing of the petition herein. The Haileys timely filed their joint Federal income tax return for the taxable year 1974 with the Director, Internal Revenue Service, Ogden, Utah.

Raymond A. Vercio and Roseanne Vercio, the petitioners in docket No. 7108–77, are individuals who resided in Denver, Colo., at the time of the filing of the petition herein. They filed joint Federal income tax returns for the taxable years 1973 and 1974 with the Director, Internal Revenue Service, Ogden, Utah. The returns were not filed within the time prescribed by law.

The parties have agreed that the facts as found by this Court relating to the Hailey case will also apply to the Vercio case. Due to this agreement, no evidence was introduced on behalf of the Vercios; therefore, when we hereinafter refer to petitioners, we will be referring solely to the Haileys.

On September 14, 1973, petitioners signed a document cap-

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.

tioned "Declaration Of Trust Of This Pure Trust." Hailey signed as grantor-creator, and Wilma Hailey and Pipp Marshall Boyls, the attorney who appeared on behalf of petitioners at trial,[2] signed as trustees. By this declaration, petitioners created what is styled the "Ray Hailey, Jr. Family Estate (A Trust)" (hereinafter the trust). Additionally, on this same date, Hailey also created the Ray Hailey, Jr., Educational Trust. The purpose of this latter trust was to obtain materials to be able to establish the trust. Hailey subsequently purchased the materials with which to fund this trust, and he deducted $5,600 on his 1974 income tax return with the following notation: "Educational endowment * * * to maintain and conserve assets." On brief, petitioners concede this amount is not deductible due to their failure to show that the sum was actually expended.

The trust instrument provided, in part, as follows:

The above named Trustees, for themselves and their successors IN TRUST, do hereby agree to accept properties real and personal to be conveyed and acknowledge acceptance of and delivery of all of the property specified, together with all the terms of The Trust herein set forth, agreeing to conserve and improve The Trust, to invest and reinvest the funds of Said Trust in such manner as will increase the financial rating of The Trust (Estate) during the period of outstanding liabilities of the various properties and enterprises in commerce for gain, exercising their best judgment and discretion, in accordance with The Trust Minutes, making distributions of portions of the proceeds and income as in their discretion, and according to the minutes, should be made, making complete periodic reports of business transactions, and upon final liquidation distributing the assets to the beneficiaries as their interests may appear; and in all other respects administering Said Trust (Estate) in good faith strictly in conformity hereto.

### EXPENDITURES

The Trustees shall fix and pay compensation of all officers, employees or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by a MAJORITY of the Board of Trustees.

\* \* \* \* \* \* \*

### TRUSTEES' DECLARATION OF PURPOSE OF THIS EXPRESS EQUITY PURE TRUST

THE DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether

---

[2]Pipp Marshall Boyls withdrew from this case on Apr. 30, 1979, and by order of the Chief Judge dated July 13, 1979, he was suspended from further practice before this Court.

tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM,

from any current source whatsoever, so that Ray Hailey Jr. grantor-creator's name _____can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to

promote the general welfare, all of which Ray Hailey Jr. grantor-creator's name _____ feels he will achieve because they are sustained by his RELIGIOUS BELIEFS.

        *     *     *     *     *     *     *

## DURATION-CLOSURE

This Trust shall continue for a period of twenty-five years from date, unless The Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient reason necessary to protect or conserve trust assets, liquidate the assets, distribute and close The Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries. * * *

## POWERS OF TRUSTEES

Trustees may do anything any individual may legally do in any state or country, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein specially noted, at their discretion for the benefit of THIS TRUST, such as, viz: buy, sell, or lease land for the surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks, or copyrights; buy, sell or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses or other trading establishments or places of business of any kind; construct, buy, sell, lease or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project, pledging The Trust property for the payment thereof; hypothecate assets, property, or both, of The Trust in business projects; own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous.

A Minute of Resolutions of The Board of Trustees authorizing what is is they determine to do or have done shall be evidence that such an act is within their power. Anyone lending or paying money to The Trustees shall not be obliged to see the application thereof; all funds paid into the treasury are and become a part of the CORPUS of THIS TRUST.

## ADMINISTRATION

The Trustees shall regard this instrument as their sufficient guide, supplemented from time to time by their resolutions (said resolution to be

ratified ALWAYS by a MAJORITY of the Trustees then in office and participating in the issuing meeting) covering contingencies as they arise and are recorded in the minutes of their meetings, which are the by-laws, rules and regulations of THIS TRUST.

Shortly after the creation of the trust, Hailey and Wilma executed documents which purported to be a conveyance to the trust of "exclusive use of * * * [their] lifetime services and all of the currently earned remuneration therefrom." Additionally, the Haileys executed documents purporting to convey certain real property (including their home), oil and gas interests, insurance policies, and personal property (including their home furnishings) to the trust.

Originally, Hailey received 100 units of beneficial ownership of the trust, which constituted all the units of beneficial ownership. Subsequently, Hailey transferred 50 units to Wilma. On April 15, 1974, Hailey transferred an additional 25 units to Wilma, 5 units to a nonprofit fund, and retained 20 units for himself. Finally, on January 18, 1975, Wilma gave 5 units each to her son, Mark Hailey (Mark), and her daughter, Leigh Keiffer (Leigh).

The documents by which these interests were purportedly transferred provided that no interest of any kind in the trust assets, management, or control thereof was conveyed. They further provided that benefits conveyed consisted solely of the emoluments distributed by the actions of trustees and nothing more.

On October 1, 1973, the trust adopted a resolution which provided that the trustees shall contract Hailey's services "to perform such duties for hire as The Trustees deem to be in the best interest of [the] TRUST." Hailey signed this resolution in his capacity as trustee, but not in his individual capacity. Neither Wilma nor Boyls signed this resolution.

On October 2, 1973, Pipp Marshall Boyls resigned as trustee of the trust. He had served for a total of 18 days. During that time, Boyls received no compensation for having served as trustee. From the time of Boyls' resignation until October 16, 1974, when Mark and Leigh were appointed as additional trustees, the petitioners were the only trustees of the trust. At the time Mark and Leigh accepted appointment as trustees, they signed undated resignations as trustees of the trust. Additionally, they both signed blank minutes of trust meetings.

During her tenure as trustee, Leigh lived in Missouri. She has attended only one trustees meeting and has received no salary or fee from the trust for being a trustee. Her only duties consisted of being informed of trust activities. There is no indication that her consent or approval of trustees' actions was ever in fact obtained. No evidence was introduced as to what services, if any, Mark performed for the trust.

The trust opened a bank account in October 1974. Only Hailey was authorized to borrow money from the bank on behalf of the trust. Petitioners were authorized to write checks on the account. Neither Mark nor Leigh had authority to borrow money on behalf of the trust or to write checks on the trust's account.

Since petitioners' residence and furnishings were transferred to the trust, the trust, in turn, provided rent-free housing for petitioners in the transferred residence. The trust also paid for the maintenance of the residence.

In addition to providing petitioners' living accommodations, the trust adopted a resolution which provided, in part, for payment by the trust of the following:

2. ALL transportation expense incident to ALL Trust business.
3. ALL traveling expense incident to ALL Trust business.
4. ALL selling expense incident to ALL Trust business.
5. ALL office expense incident to ALL Trust business.

\* \* \* \* \* \* \*

7. ALL entertainment and/or convention and meeting expenses incident to ALL Trust business.
8. Adequate insurance to cover cost of medical expenses incurred by the above mentioned persons. [Hailey and Wilma.]
9. A reasonable, monthly, consultant's fee to the above named persons. [Hailey and Wilma.]

The decision as to what constituted trust business was made solely by petitioners and, pursuant to this resolution, the trust paid for all expenses relating to the maintenance of petitioners' residence, the use of petitioners' automobiles, and their health care.

The only services that petitioners performed for the trust consisted of keeping records and reading literature as to what was going on with this kind of trust throughout the country. For this, petitioners were paid $19,345 as "reasonable consulting fees" for their services to the trust in 1974. The trust did not withhold any social security, income, or FICA taxes on that amount.

Hailey, with nine other individuals, is a shareholder in the Cody Dental Group (Cody), a professional corporation. Hailey was also employed as a dentist by Cody at the time the trust indenture was executed. On November 1, 1974, an agreement was signed by the trust and the corporation which provided that the trust was to provide Hailey's services as a dentist to the corporation with the corporation paying the trust a fee of $46,500 per year.

Prior to forming the trust, Hailey consulted Milton E. Meyer, an attorney at law. Meyer advised Hailey not to establish this trust. Additionally, petitioners' accountant since 1948 told petitioners he wanted nothing to do with this trust and terminated his employment with petitioners.

In January 1974, the District Director, Internal Revenue Service, Denver, Colo., sent Hailey a certified letter which stated that the Internal Revenue Service did not recognize this trust arrangement for Federal income tax purposes.

Educational Scientific Publishers, Pipp Marshall Boyls, and others involved in the sales of this trust plan were permanently enjoined by the District Court of Colorado, Denver County, from promoting this trust in the State. Hailey was aware of this injunction but has taken no action to terminate the trust.

During 1974, the trust reported as income: $47,468 (fee for Hailey's services to Cody); $2,278 (consulting fee); and $390 (oil income). The trust took deductions of $39,934: for charitable contributions ($1,087); interest and taxes ($3,038); and administrative expenses, including amounts for housing, utilities, automobile expenses, medical expenses, telephones, and entertainment ($35,809). During that same year, petitioners reported as income the $19,345 paid to them as a consulting fee by the trust and a $7,058.52 distribution from the trust.

In the statutory notice of deficiency, respondent increased petitioners' income by the amounts previously reported by the trust. Respondent decreased their income by allowable deductions[3] which were claimed by the trust and by amounts reported by petitioners as consulting fees and distributable income from the trust. Respondent has made similar adjustments to the Vercios' taxable income for the years in issue.

---

[3] In his statutory notice, respondent reduced or disallowed entirely some deductions claimed by the trust when reattributing deductions to petitioners. These adjustments are not contested by petitioners.

The parties have stipulated that these adjustments were correct if this Court finds that the trusts do not insulate the Haileys and the Vercios from the incidence of Federal taxation.

OPINION

The first issue for decision is whether by conveyance of his lifetime services, Hailey can effectively shift the tax burden to the trust on income paid for Hailey's services. Petitioners argue that the trust, as a viable legal entity, was the true earner of the income and, therefore, the proper party to bear the tax burden. Respondent, while not questioning the viability of the trust,[4] contends that the purported conveyance by Hailey constituted an anticipatory assignment of income and, therefore, the amounts paid to the trust as salary and consulting fees are properly includable in the gross income of petitioners. We agree with respondent.

One of the primary principles of our system of income taxation is that income must be taxed to the one that earns it. *Commissioner v. Culbertson*, 337 U.S. 733, 739–740 (1949). Attempts to subvert this principle by deflecting income away from the true earner to another entity by means of contractual agreements, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes despite their validity under applicable State law. *Lucas v. Earl*, 281 U.S. 111 (1930); *United States v. Bayse*, 410 U.S. 441 (1973). The choice of the proper taxpayer revolves around the question of which person or entity in fact controls the earning of the income rather than the question of who ultimately receives the income. *American Savings Bank v. Commissioner*, 56 T.C. 828 (1971); *Wesenberg v. Commissioner*, 69 T.C. 1005 (1978).

The facts and issues presented in the instant case are virtually identical to those presented in *Wesenberg v. Commissioner*, supra.[5] In *Wesenberg*, the taxpayer also established a family trust and made a purported conveyance of his future services to

[4]In his notices of deficiency issued to both taxpayers, respondent gave as an alternative reason for taxing the income to the taxpayers that the creation of the trusts, the assignments of income thereto, and the deductions by the trusts constituted sham transactions not recognized for Federal income tax purposes; however, respondent did not argue this contention on brief. But see *Markosian v. Commissioner*, 73 T.C. 1235 (1980), decided this same day.

[5]See also *Mullenaux v. Commissioner*, T.C. Memo. 1979–293; *Vnuk v. Commissioner*, T.C. Memo. 1979–164 (on appeal 8th Cir., Oct. 15, 1979); *Morgan, v. Commissioner*, T.C. Memo. 1978–401; *Damm v. Commissioner*, T.C. Memo. 1977–194; *Horvat v. Commissioner*, T.C. Memo 1977–104.

the trust. The terms of the trust were essentially the same as the trust in this case. We held in *Wesenberg* that the conveyance of the taxpayer's lifetime services and the income earned through the performance of those services was simply an assignment of income and therefore ineffective to shift the tax burden from the taxpayers to the trust. This conclusion was based on finding that the taxpayer, rather than the trust, had the "ultimate direction and control over the earning of the compensation." (69 T.C. at 1010–1011.) We believe that this is also the case here.

There is no evidence to support a finding that the trust had any right to direct Hailey's activities. Although the trust adopted a resolution which stated that the trustees shall contract Hailey's services to perform such duties for hire as the trustees deem in the best interest of the trust, we seriously doubt that this resolution rose to the level of a binding contract creating enforceable rights and duties between Hailey and the trust.[6] In the first place, this resolution was not signed by Hailey in his individual capacity; secondly, no duties or specific remuneration were mentioned in this resolution; and finally, it is questionable whether the trust could obligate Hailey to perform these services which are so inherently personal in nature. See *Wesenberg v. Commissioner, supra.* It is apparent that Hailey could have ceased providing services for the Cody Dental Group without any recourse by the trust, and Hailey, rather than the trust, controlled the earning of the income. See *American Savings Bank v. Commissioner, supra.* This fact distinguishes the instant case from *Rubin v. Commissioner*, 429 F.2d 650 (2d Cir. 1970); *Laughton v. Commissioner*, 40 B.T.A. 101 (1939), remanded 113 F.2d 103 (9th Cir. 1940); and *Fox v. Commissioner*, 37 B.T.A. 271 (1938), upon which petitioners rely.[7]

In an attempt to distinguish *Wesenberg,* petitioners made much of the fact that an employment agreement relating to Hailey's services was entered into between the trust and Cody. We do not find this distinction material to the resolution of the issue of control. Although this contractual arrangement may have given the trust the legal right to receive the income earned, it did not alter the fact that Hailey was in control of the earnings and, as stated previously, the choice of the taxable

---

[6] The vitality of this resolution is also doubtful as only one of three trustees (Hailey) signed, while the trust instrument called for resolutions to be passed only by a majority of trustees.

[7] See *Damm v. Commissioner, supra.*

person turns on who in fact controls the income. *Lucas v. Earl, supra.*[8]

Accordingly, we hold that the trust is ineffectual to shift the tax burden away from petitioners to the trust. Thus, the total amount paid to the trust in consideration for Hailey's personal services is includable in the gross income of petitioners.[9]

The next issue for decision is whether certain oil royalty income and deductions reported by the trust are properly attributable to petitioners under the "grantor trust rules" of sections 671 through 678.

In general, the income tax treatment of trusts and their beneficiaries is governed by sections 641 through 668. Ordinarily, under section 662, a beneficiary of a trust is taxable only on his distributable share of income required to be distributed currently and all other amounts which are properly paid or credited for the taxable year. However, when the grantor of a trust retains certain powers enumerated in sections 673 through 677, then, for income tax purposes, he is treated as "owner" of that portion of the trust over which those powers extend. Where the grantor is so treated, section 671 includes in the grantor's income "those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account * * * in computing taxable income or credits against the tax of an individual."

Although respondent contends that under the facts of this case all provisions of the grantor trust rules require that Hailey be treated as owner of the entire trust, we need only to look at section 677 which provides in part:

SEC. 677. INCOME FOR BENEFIT OF GRANTOR.

(a) GENERAL RULE.—The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be—

(1) distributed to the grantor or the grantor's spouse;

(2) held or accumulated for future distribution to the grantor or the grantor's spouse, * * *

Petitioners concede that the trust vests in Hailey the discre-

---

[8]See also *Morgan v. Commissioner, supra.*

[9]In view of the stipulation, this holding applies equally to the Vercios.

tion to distribute income to, or accumulate the income for, future distribution to himself or his spouse.[10] He argues though, that section 677 is inapplicable to the instant situation, as the prohibited retained powers are exercisable only with the consent of at least two of the other three trustees all of whom are adverse parties. He additionally asserts that the provision in section 677 referring to the grantor's spouse is inapplicable where, as here, the spouse is an adverse party.

As an initial matter, although the trust provides that any action must have the consent of the majority of trustees, we do not believe that the consent of Mark and Leigh were actually needed for Hailey and Wilma to act on behalf of the trust. Therefore, even assuming they were adverse parties would not help petitioners since the exercise of their powers is not preconditioned on the consents of Mark or Leigh. Our conclusion is based on the following considerations: (1) They attended no meetings, (2) they signed blank minutes which would authorize trust actions, and (3) they signed undated resignations which could be accepted at any time.

By no stretch of the imagination were Mark and Leigh's consents required when any objection by them to Hailey's actions could be avoided by acceptance of their resignations. Additionally, Leigh's testimony indicated that she was never consulted on any decisions involving the trust. Therefore, it is evident that Hailey did not consider her consent crucial.

As to Wilma, however, these considerations do not apply, since it appears that her consent was actually needed, and in fact obtained, before Hailey could act. Therefore, for the purposes of the following analysis, we will consider the trust as being administered solely by Hailey and Wilma.

Before a party may be considered adverse, that party must have a substantial beneficial interest in the trust, and that interest must be adversely affected by the exercise or nonexercise of the power that the party possesses. (Sec. 672.) Whether the economic arrangements of a trust cause the interests of a trustee to be adverse to those of the grantor is a factual question

---

[10]See *Wesenberg v. Commissioner*, 69 T.C. 1005 (1978), which involved a virtually identical trust. In *Wesenberg*, this Court held that, because there were virtually no restrictions in the trust instrument on the use of income or corpus to satisfy obligations of the grantor, sec. 677 required the grantor to be treated as owner of the entire trust. Had we been called on to decide this issue, we believe *Wesenberg* would also be applicable to the facts of the instant case.

to be decided on the merits of each individual case. *Paxton v. Commissioner*, 520 F.2d 923 (9th Cir. 1975), affg. 57 T.C. 627 (1972). Of course, the normal presumption of correctness applies to respondent's determination, and the burden of proving that determination incorrect rests with petitioners. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

The existence of a substantially adverse interest precludes taxing the grantor on the theory that the holder of that interest would be motivated to protect his interest from any action of the grantor which might otherwise diminish or alter the holder's economic rights. Cf. *Laganas v. Commissioner*, 281 F.2d 731 (1st Cir. 1960). In this situation, the party possessing a power enumerated under sections 673 through 677, is truly independent of grantor control and, therefore, it is inequitable to tax the grantor. Resolution of the question of adversity requires a comparision of the economic interest of the party claimed to be adverse with the provisions of the trust which, in the absence of an adverse interest, would require the grantor to be treated as owner under the relevant sections of the Code.

Petitioners' argument can be briefly stated. They reason that since Wilma holds 65 units of beneficial interest, her interest in the trust is substantial, and, it therefore follows that she is an adverse party.

Petitioners' argument misses the point, for even assuming Wilma's interest is substantial, petitioners have given no consideration to how her interest would be affected by Hailey's exercise or nonexercise of the power proscribed in section 677. When this consideration is brought into focus, we believe it is evident that Wilma cannot be considered an adverse party under section 677.

There is no question that the spouse of the grantor may ordinarily qualify as an adverse party for the purposes of the grantor trust rules. *Laganas v. Commissioner, supra.* This general rule is not applicable in this case, however, when the circumstances under which section 677 is intended to cover are analyzed.

The application of section 677 was expanded by the Tax

Reform Act of 1969[11] to provide that the grantor would be treated as owner of any portion of a trust whose income could be distributed to, or accumulated for, the grantor's spouse. Prior to the amendment, section 677 only applied when income could be distributed or held for the benefit of the grantor. By this amendment, we feel that Congress effectively ruled out the possibility of a spouse being treated as an adverse party when a provision in the trust allows for the income to be used for that spouse's benefit. We cannot conceive of a situation where the grantor's spouse would be motivated to prevent an application of income from a trust for that spouse's benefit. Contrast this with a situation where the power to apply income in the favor of the grantor's spouse is held by an income beneficiary. In that situation, there would exist a significant motivation to act independently of the grantor, for any action in favor of the spouse would diminish that beneficiary's interest. In that situation, the income beneficiary is adverse since it is unlikely that he is subservient to the grantor's wishes. See *Commissioner v. Betts*, 123 F.2d 534 (7th Cir. 1941); *Bradley v. Commissioner*, 1 T.C. 566 (1943). In the present case, we can find no motivation on the part of Wilma to prevent income from being distributed or held for her benefit and, therefore, she is not an adverse party to a distribution to the grantor's spouse under section 677.

The regulations enacted under section 677 support this conclusion. Section 1.677(a)–1(b)(2), Income Tax Regs., provides in part:

With respect to property transferred in trust after October 9, 1969, the grantor is treated, under section 677, in any taxable year as the owner (whether or not he is treated as an owner under section 674) of a portion of a trust of which the income for the taxable year or for a period not within the exception described in paragraph (e) of this section is, or in the discretion of the grantor, *or his spouse*, or a nonadverse party, or any combination thereof (*without the approval or consent of any adverse party other than the grantor's spouse*) may be:

(i) Distributed to the grantor or the grantor's spouse;

(ii) Held or accumulated for future distribution to the grantor or the grantor's spouse * * *

[Emphasis added.]

Although the validity of the regulation was not placed in issue, we think the exclusion of the grantor's spouse as an adverse

---

[11]Pub. L. 91–172, sec. 332, 83 Stat. 599 (1969).

party is a reasonable interpretation of section 677. Any other interpretation would allow the statute to be easily subverted by simply naming the spouse as trustee of a trust for that spouse's benefit, a result which Congress did not intend.

Therefore, since the power to apply income for the benefit of the grantor's spouse did not require as a precondition to its exercise the consent or approval of an adverse party, and since it is conceded that this power applied to both the income and corpus, Hailey, as grantor, is to be treated as owner of the entire trust under section 677. Our holding applies equally to the Vercios.

In his statutory notice of deficiency, respondent reduced or disallowed entirely some of the deductions of the trust which he reallocated to petitioners. Respondent's determination as to the amount of the allowable deduction is not challenged by petitioners, and it will therefore be sustained.

The next issue for decision is whether petitioners are liable for additions to tax under section 6653(a) for 1974.

Section 6653(a) imposes a 5-percent penalty if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations. The taxpayer has the burden of proving respondent's determination in error. Rule 142(a), Tax Court Rules of Practice and Procedure.

Petitioners have totally failed to introduce any evidence for us to conclude that respondent erred in his determination. Indeed, the overwhelming evidence indicates that petitioners were fully aware that the trust was merely a scheme for the avoidance of taxation. This fact is evidenced by petitioners' complete awareness of the Service's position regarding this trust. Any doubts as to the reasonableness of this position were certainly dispelled by the opinions of their attorney and accountant on the advisability of establishing this trust. In view of the foregoing, we uphold respondent's determination of the addition to tax. Due to the stipulation, we also uphold the additions to tax imposed against the Vercios for 1973 and 1974.

The final issue for our determination is whether the Vercios are liable for additions to tax under section 6651(a) for 1973 and 1974. The Vercios have chosen to present no evidence bearing on this issue, and we are left with no choice but to sustain respondent's determination.

*Decisions will be entered for the respondent.*