LA VERNE SCHULZ and BARBARA SCHULZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; LA VERNE SCHULZ FAMILY ESTATE (A TRUST), BARBARA A. SCHULZ, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schulz v. Commissioner
Docket Nos. 2538-78, 2541-78.
United States Tax Court
T.C. Memo 1980-568; 1980 Tax Ct. Memo LEXIS 16; 41 T.C.M. (CCH) 599; T.C.M. (RIA) 80568; December 22, 1980
Joseph W. Weigel, for the petitioners. Harry K. Friedman and Edward G. Langer, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In these consolidated cases, respondent determined the following deficiencies: Docket No. 2538-78
Year
Deficiency
1972
$ 5,349.76
1973
12,569.76
1974
7,091.91
Docket No. 2541-78
Year
Deficiency
1972
$ 1,948.41
1973
4,068.20
Concessions having been made, the issues for decision are: 1. Whether income received and expenses incurred are attributable to petitioners, La Verne Schulz and Barbara Schulz, or to a trust purportedly created by them. 2. Whether petitioners are entitled to a deduction for automobile use in an amount greater than that allowed by respondent. *18 3. Whether petitioners are entitled to a deduction in excess of the standard deduction for the years in issue. FINDINGS OF FACT Petitioners La Verne Schulz (La Verne) and Barbara Schulz (Barbara), husband and wife, were legal residents of Wisconsin when the petitions in these cases were filed. Petitioners filed their joint Federal income tax returns for 1972 through 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The La Verne Schulz Family Estate (A Trust) (hereinafter the trust) also filed a Federal income tax return for 1972 and 1973 with the Internal Revenue Service Center, Kansas City, Missouri. Prior to the years in issue, La Verne was involved in dairy farming and selling real estate. During 1973 and 1974, Barbara was employed at the county courthouse. On September 15, 1972, petitioners executed a document entitled "Declaration of Trust of this Constitutional Trust." The document provided, interalia:
POWERS OF TRUSTEES A Minute of Resolutions of The Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. Anyone lending or paying money to The Trustees shall not *19 be obliged to see the application thereof, all funds paid into the treasury are and become a part of the CORPUS of The Trust. ADMINISTRATION The Trustees shall regard this instrument as their sufficient guide, supplemented from time to time by their resolutions (said resolution to be ratified ALWAYS by a MAJORITY of the Trustees then in office and participating in the issuin meeting) covering contingencies as they arise and are recorded in the minutes of their meetings, which are the by-laws, rules and regulations of This Trust. TRUSTEES DECLARATION OF PURPOSE THE PURPOSE OF THIS EXPRESS TRUST shall be to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR CREATOR HEREOF. Included therein is the exclusive use of his or her lifetime services and ALL OF his or her EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that La Verne Schulz can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which La Verne Schulz feels he will achieve because they are compatable *20 [sic] with his RELIGIOUS BELIEFS. DURATION--CLOSURE This Trust shall continue for a period of twenty-five years from date, unless the Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient reason, liquidate the assets, distribute and close The Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries. In the event this instrument has been recorded with the Recorder of Deeds, they shall then file with said Recorder a notice that The Trust shall terminate and cease, and thereupon, The Trustees shall automatically be further discharged hereunder, PROVIDED, their administration and distribution has been made in good faith, otherwise a court of equity may be invoked to review and correct any tort or error. The initial trustees named in the document were Barbara and Ena Lundgren, the wife of petitioners' bookkeeper. On the same day the documents were executed, La Verne was appointed a trustee. Subsequently, Ena Lundgren resigned as trustee and was replaced by petitioners' daughter. *21 Petitioners transferred various items of real and personal property to the trust. These items included petitioners' dairy farm, dairy herd, farm equipment, personal property involved in La Verne's real estate business, personal household effects, and other real property. Prior to the execution of the trust, petitioners owned much of this property jointly. Barbara conveyed her interest in the property and her lifetime services to La Verne, who then transferred them to the trust. A savings account and checking account were established in the name of the trust. Only petitioners were empowered to withdraw money from either of these accounts. Although petitioners deposited their business income in the trust's account, the business activities of neither petitioner were affected by the creation of the trust. La Verne was designated the "Executive Manager" of the trust. La Verne received a management fee for his services which he reported on his Federal income tax returns for the years in issue. As manager and as trustees, petitioners had discretion to decide what expenses would be paid by the trust. Under this authority, petitioners authorized the expenditure of trust funds *22 for various personal expenses. The beneficiaries of the trust were petitioners and their three children. Respondent determined that all of the income reported by the trust was taxable to petitioners. In addition, respondent disallowed deductions related to automobile expenses and deductions claimed in excess of the standard deduction. OPINION Respondent proposes several alternative arguments supporting his determination that petitioners, rather than their purported trust, are taxable on income reported by the trust. We agree with respondent that the purported trust is devoid of economic reality and, further, falls within the grantor trust provisions of sections 671 through 677, Internal Revenue Code of 1954. We do not reach respondent's other alternate contentions. In the instant case, petitioners attempted to create a trust by conveying their "lifetime services" to the trust. Nevertheless, the management fee that La Verne received from the trust was reported as his own income rather than conveyed to the trust. Moreover, after the trust's creation, petitioners' business activities remained unaltered. The only change that occurred was that their income was deposited *23 in an account named La Verne Schulz Family Estate (A Trust). Petitioners alone were authorized to draw checks on this account, from which they paid their personal and other expenses. The words of the court in Vnuk v. Commissioner,621 F.2d 1318, 1320-1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court, are apposite: Where the taxpayer simply assigns his lifetime services and income earned from the performance of those services, and the taxpayer rather than the trust has the "ultimate direction and control over the earning of the compensation," the conveyance is ineffective to shift the tax burden from the taxpayer to the trust. Wesenberg v. Commissioner,69 T.C. 1005, 1010-11 (1978). Here, it is clear that the "ultimate direction and control" rested in the taxpayer and not in the Trust. While the taxpayer may have conveyed, at least in form, his services to the Trust, he was not in substance a bona fide servant of the Trust. The Trust had no right to supervise the taxpayer's employment or determine his remuneration, and the taxpayer had no legal duty to earn money or perform services for the Trust. In such circumstances, the conveyance *24 merely constituted an anticipatory assignment of income and was insufficient to shift the incidence of taxation from the petitioners to the Trust. We further note that the income was taxable to petitioners by reason of the "grantor trust" provisions set out in sections 671 through 677 of the Code, 26 U.S.C. secs. 671-77. Under these provisions a grantor of a trust who has retained certain powers which may be exercised without the approval or consent of an adverse party is treated as the owner of the trust and taxed individually. In finding the Vnuk Trust grantor taxable the Tax Court observed: In Wesenberg we held that the taxpayer retained total control over the trust and that the taxpayer should, under the grantor trust rules, be treated as the owner of the trust for tax purposes. With respect to this issue, the facts in this case are virtually identical to the facts in Wesenberg. Several factors indicate that petitioner retained total control over the Trust. First, none of petitioner's powers as trustee required the consent of an "adverse party." Second, petitioner had beneficial enjoyment of the Trust corpus and income. Third, petitioner *25 used the Trust for his own benefit (footnote omitted). Finally, the assets of the Trust could revert to petitioner at any time. In other cases we consistently have held that these so-called family trusts do not shield taxpayers from income otherwise taxable to them. See Markosian v. Commissioner,73 T.C. 1235 (1980); Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). The purported trust here does not relieve petitioners of tax on the income which they earned. We must also sustain respondent's disallowance of automobile expense deductions and deductions in excess of the standard deduction. Other than vague testimony that the mileage used in computing the automobile expense was derived by odometer readings, petitioners have introduced no evidence on these issues. Thus, petitioners have failed to prove that respondent's determinations were erroneous. To reflect the foregoing, Decisions will be entered under Rule 155.