ALLAN LUNDGREN and ENA LUNDGREN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THE ALLENA ESTATE (A TRUST), ALLAN and ENA LUNDGREN, TRUSTEES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lundgren v. Commissioner
Docket Nos. 1979-78, 2081.78.[1]
United States Tax Court
T.C. Memo 1981-136; 1981 Tax Ct. Memo LEXIS 609; 41 T.C.M. (CCH) 1139; T.C.M. (RIA) 81136; March 24, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined the following deficiencies in petitioners' *611 Federal income tax: Taxable Year
Deficiency
The Allena Estate (A Trust),
1972
$ 1,642.11
Allan and Ena Lundgren,
1973
1,392.76
Trustees
1974
734.91
Allan Lundgren and Ena Lundgren
1972
$ 2,508.13
1973
2,923.33
1974
2,748.59
A concession having been made, the issues for decision are (1) whether petitioners Allan and Ena Lundgren or a trust are taxable on certain income earned during the years which were assigned to the trust; and (2) in the alternative, if the income is taxable to the trust, whether the trust is an association taxable as a corporation under section 7701. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Allan and Ena Lundgren resided in Elkhorn, Wisconsin, at the time of filing their petition herein. Petitioners timely filed joint Federal income tax returns for the taxable years 1972 through 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The Allena Estate (A Trust), Allan and Ena Lundgren, Trustees, the petitioner in docket number 2081-78, had its principal office in Elkhorn, Wisconsin, at the time of filing its petition herein. The *612 trust timely filed its Federal income tax returns for the taxable years 1972 through 1974 with the Internal Revenue Service Center, Kansas City, Missouri. On September 7, 1971, petitioner Allan Lundgren (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as The Allena Estate (A Trust) (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept the exclusive use of the lifetime services of Allan Lundgren the Grantor Creator of THIS TRUST and to include all of his earned remunerations from any source whatsoever along with certain personal and real properties in exchange for all the beneficial interest (100 units) of THIS TRUST (The Allena Estate) so that Allan Lundgren can maximize his lifetime efforts by utilizing all of his constitutional rights in his pursuit of happiness and his desire to promote the general welfare * * *." Petitioner's wife Ena Landgren (hereinafter Ena) and a friend, Elma Olsen (hereinafter Elma) were the initial trustees of the Trust. On October 27, 1971, petitioner and Ena were appointed lifetime trustees *613 and on April 15, 1973, Elma resigned as a trustee. Thereafter during the years herein there were no further changes in the trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Petitioner executed other documents on January 26, 1972, for the purpose of conveying his real and personal property to the Trust. The real property, including petitioner's home, was jointly owned by petitioner and his wife prior to the conveyance to the Trust. Ena transferred her interest to the Trust along with petitioner. Petitioner also transferred household and office equipment and furniture used in a bookkeeping service to the Trust. In addition, on January 26, 1972, petitioner executed a document to convey all of the income earned from his services as the sole proprietor of the Farm Bookkeeping Service to the Trust. Specifically the document provides that "I, Allan Lundgren hereby convey to THE ALLENA ESTATE (A TRUST) all my earned and to be earned remuneration and all my right, title and interest in such earnings from my *614 services rendered or to be rendered * * *." In exchange for the real and personal property, and the conveyance of petitioner's earned income, the Trust issued all of its 100 units of beneficial interest to petitioner. On January 27, 1972, petitioner transferred 50 units to Ena and on January 30, 1972, he transferred 20 units each to his two children, Richard and Irene. The rights of the owners of the units of beneficial interest were prescribed in the Declaration of Trust and the certificates or beneficial interest. The Declaration of Trust provides, in part, that "* * * Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to the Trust property, nor any undivided interest therein, nor in the management thereof; nor shall the death of the holder entitle his heirs or legal representatives to demand any partition or division of the property of the Trust * * *." This document goes on to declare that "It is expressly declared that A Trust, and not a partnership, is hereby created; and that neither the Trustees, officers, or certificate holders, present or future, have or possess and beneficial interest in the property or assets of Said Trust *615 * * *." The rights of the owners of the beneficial interests are also set forth in the Certificate of Beneficial Interest, which certificates provide that "the benefits hereby conveyed consist solely of the emoluments as distributed by the action of the Trustee and nothing more." The trustees were authorized, by the Declaration of Trust, "* * * to do anything any citizen may do in any state or country * * *." Further, "Resolutions of the Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such is within their power." Prior to and during the years herein petitioner operated a bookkeeping service as a sole proprietor under the name of Farm Bookkeeping Service, performing various bookkeeping and tax services for his clients on a fee basis. Although the fees received for bookkeeping services were deposited in the Trust bank account, there was no other visual or substantive change in the operation of the Farm Bookkeeping Service before or after the formation of the Trust. On January 26, 1972, petitioner and Ena entered into an employment contract with the Trust which provided that petitioner would serve as the Executive Manager and *616 Ena would serve as Executive Secretary, both to serve for the life of the Trust. The agreement further provided that "The Managers shall be entitled to remuneration for their services and shall from time to time submit statements for their consultant fees for an amount mutually agreed upon between the Managers and the Trustees, substantiated by the minutes of the Trust." Trust minutes dated January 30, 1972, provide that petitioner could draw $ 100 per week conditioned upon the Trust having funds available. During each of the years 1972 through 1974, the Trust paid personal expenses of petitioner and Ena including housing, transportation, health care, clothing, education and vacations. In addition the Trust paid petitioner and Ena consulting fees totalling $ 3600, $ 5290, and $ 6,468.55 for the years 1972, 1973 and 1974 respectively. The consulting fee was based on the personal needs of petitioner and Ena and not based on the services performed. On its 1972, 1973 and 1974 Federal income tax returns the Trust reported the fees petitioner earned for his bookkeeping and income tax services and deducted business expenses relating to the fees earned. In addition the Trust deducted *617 for each of the years "administrative" expenses which consisted of petitioner's personal, living, and family expenses and "consulting fees" paid by the Trust to petitioner and Ena. Petitioner and Ena reported the consulting fees received from the Trust, and interest income on their 1972, 1973 and 1974 Federal income tax returns. Respondent contends that all of the income and expense items reported by the Trust from the Farm Bookkeeping Service are income and expenses of petitioner, not the Trust. In the alternative, respondent contends that if the income and expenses are taxable to the Trust, then the Trust from th Farm Bookkeeping Service are income and expenses of petitioner, not the Trust. In the alternative, respondent contends that if the income and expenses are taxable to the Trust, then the Trust should be treated as an association taxable as a corporation pursuant to section 7701. OPINION The basic issue in this case is whether the purported conveyance by petitioner of his property and earned income to the Trust was effective to shift the incidence of taxation on the income received from the bookkeeping service each year from petitioner to the Trust. Petitioner contends *618 that a valid trust was created and the assignment of his lifetime services and all the income accruing therefrom was sufficient to shift the incidence of taxation from himself to the Trust. Petitioner argues that the real question involved herein is the right to contract under the United States Constitution and not whether there was an assignment of income from petitioner to the Trust. As a result of the assignment, petitioner argues that he performed service as an independent contractor for the Trust. Respondent disagrees with petitioner's position and maintains that all of the income from the bookkeeping service is includible in petitioner's income since the conveyance to the Trust was simply an anticipatory assignment of income ineffective to treat the compensation as that of the Trust, that any income earned by the Trust is taxable to petitioners under the grantor trust provisions set forth in sections 671 through 677, and that the Trust lacked economic reality. We agree with respondent that the net income from the bookkeeping service for each of the years is taxable to petitioner. It is true that petitioner has a constitutional right to enter into contractual arrangements. *619 But it is also true that a taxpayer may not enter into such arrangements that are designed simply to alter the Federal income tax consequences of income between various entities without regard to the true earner of such income. Lucas v. Earl, 281 U.S. 111 (1930). As stated by the Supreme Court the "first principle of income taxation" is that income must be taxed to the one who earns it. Commissioner v. Culbertson, 337 U.S. 73, 739-740 (1949). Further, it is the person or entity that controls the earning of the income, and not the one who ultimately receives it, that must pay the income tax thereon. American Savings Bank v. Commissioner, 56 T.C. 828, 838-839 (1971); Wesenberg v. Commissioner, 69 T.C. 1005 (1978). As we said in American Savings Bank v. Commissioner, supra at 839, the factual background must be carefully scrutinized to determine the person that earns the income. In the instant case petitioner executed a document which conveyed to the Trust "* * * all my earned and to be earned remuneration * * * from my services * * *." Such an assignment is a classic case of a taxpayer's attempt *620 to shift the incidence of taxation on earned income to another entity. Petitioners appear to argue that since the assignment preceded the earning of the income, that the assignment of income rule set forth by the Supreme Court does not apply. However, in applying the Supreme Court's rule that income is taxed to the one who earns it, the crucial fact to consider is who earned the income and not when the assignment was made. Accordingly, we hold that all amounts of income and expenses from the Farm Bookkeeping Service reported by the Trust during each of the years at issue herein was properly the income and expense of petitioner. In addition we find that the Trust has no economic substance. Petitioner and Ena had complete control of the Trust to such an extent that the Trust was meaningless pieces of paper. It is obvious that petitioner had control of the Trust or he would not have made a blind assignment of his income from the bookkeeping service, his only source of income, without a precise understanding as to the amount of compensation he was to receive from the Trust. When questioned about the lack of a compensatory arrangement with the Trust, petitioner stated that his compensation *621 would be based on his needs. Further evidence of petitioner's control is the payment of substantial amounts of his personal expenses. Since the Trust document specifically grants the trustees full power to perform any act without governing fiduciary guidelines, it is clear that the Trust was established and operated as an empty shall for the benefit of petitioner. These facts clearly establish that the Trust had no independent economic significance during the years herein and should be ignored for income tax purposes. For other cases where we held that trust arrangements similar to the one herein were not effective to shift the incidence of taxation from the taxpayer to a trust, see Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); Markosian v. Commissioner, 73 T.C. 1235 (1980); Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); Vunk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner, T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner, T.C. Memo. 1980-313; *622 and Gran v. Commissioner, T.C. Memo. 1980-558. To reflect the conclusions reached herein Decisions will be entered under Rule 155. Footnotes
1. These cases were consolidated for the purposes of trial, briefing and opinion.↩
2. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩