DONALD F. DONOVAN and GRACE DONOVAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DONALD F. DONOVAN and GRACE L. DONOVAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Donovan v. Commissioner
Docket Nos. 1319-77, 11500-78.
United States Tax Court
T.C. Memo 1981-150; 1981 Tax Ct. Memo LEXIS 595; 41 T.C.M. (CCH) 1188; T.C.M. (RIA) 81150; March 30, 1981. Donald F. Donovan, pro se. Joseph Peters, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was tried before Special Trial Judge Marvin F. Peterson pursuant to Rule 180, Tax Court Rules of Practice and Procedure. His report was served on the parties. Petitioners filed a exceptions to the report. After careful consideration, the Special Trial Judge's report, which is set forth below, is adopted. REPORT OF SPECIAL TRIAL JUDGE *
PETERSON, Special *597 Trial Judge: In these consolidated cases respondent determined the following deficiencies and additions to tax under section 6653(a): [1]
Addition to Tax
Docket No.
Taxable Year
Deficiency
(sec. 6653(a))
1319-77
1972
$ 446.92
1319-77
1973
951.57
1319-77
1974
530.77
11500-78
1975
3,378.00
$ 169.00
11500-78
1976
5,135.00
257.00
The issues for decision are: 1. Whether petitioner Donald F. Donovan or a trust is taxable on wages earned during the year which were assigned to a trust; 2. Whether other income and expense items which were reported by the trust should have been reported by petitioners; and 3. Whether any part of petitioners' underpayment of tax for 1975 and 1976 was due to negligence or an intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners Donald F. and Grace L. Donovan were residents of Milwaukee, Wisconsin, at the time of *598 filing the petitions herein. Petitioners filed joint Federal income tax returns for the taxable years 1972 through 1976 with the Internal Revenue Service Center, Kansas City, Missouri. On September 25, 1972, petitioners Donald F. and Grace L. Donovan executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioners for the purpose of creating a trust known as the Donald F. and Grace L. Donovan Family Estate (A Trust) (hereinafter trust). The declared purpose of the trust was "to accept from Donald Donovan and Grace Donovan the exclusive use of their lifetime services including All their earned remuneration from any outside source, * * * and to accept also, other items of their personal property." The initial trustees were Kenneth Warford, a friend of petitioners, and Mary Ellen Donovan, petitioners' daughter. In addition, sometime after September 25, 1972, Harvey Woebbeking (who married petitioners' daughter, Mary Ellen), and petitioners Donald F. and Grace L. Donovan became trustees. Kenneth Warford resigned as trustee in 1975 and was replaced by Mary Taylor. The trust was to continue for a period of 25 years unless the *599 trustees unanimously determined to terminate the trust at an earlier date at which time the assets of the trust would be distributed to the beneficiaries. On September 29, 1972, petitioner Donald F. Donovan (hereinafter petitioner) executed a document which irrevocably conveyed to the trust "ALL my earned remuneration and to be earned remuneration from all and any outside source, and ALL my right, title and interest in such earnings from my services rendered or to be rendered." Specifically, the document provided that "my current outside sources of earned remuneration as of THIS date, include services rendered or to be rendered through and/or to the Water Department of the City of Milwaukee, Milwaukee, Wisconsin," and further, "ALL checks, vouchers, commissions, emoluments of whatsoever nature made payable to ME for any and all outside services rendered or to be rendered by ME, as detailed above in this Conveying Agreement, will henceforth be endorsed over and/or deposited to the account of, or registered in the name of the above named Trust." In return petitioner received one-half of the 100 units of beneficial interest in the trust. Petitioner's wife executed a similar conveying *600 document in exchange for the other one-half of the 100 units of beneficial interest. Shortly thereafter petitioner and his wife returned their certificates of ownership representing a total of 100 units of beneficial interest for cancellation and for reissuance of 90 units to petitioner's mother-in-law and 5 units each to petitioner and his wife. All distributions to the beneficiaries were discretionary with the trustees. During the taxable years at issue the trust paid various personal and living expenses of the petitioners. During the years at issue petitioner received income for work performed as a field investigator for the City of Milwaukee, and as a police officer at the Wisconsin State Fair. Neither employer entered into an employment contract with the trust. Wages were paid directly to petitioner who would, in turn, endorse the check and deposit it in the trust's bank account. In addition, petitioners received dividend and interest income from investments; however, these amounts were reported by the trust, not petitioners. OPINION The first question to resolve in the instant case is whether certain wages earned by petitioner are properly income of the trust or *601 of petitioner. Respondent contends that petitioner is taxable on these amounts since he earned the income and that any assignment to the trust did not effectively transfer the incidence of taxation to the trust. Except for respondent's contention that the trust should be ignored since it lacks economic reality, respondent recognizes the existence of the trust, but contends the income should be taxed to petitioner under the grantor trust rules of sections 671 through 678. Petitioner on the other hand agrees that his personal services actually earned the income, but he contends that the document of September 29, 1972, which conveyed his "earned remuneration and to be earned remuneration" did transfer, as of the date of the document, his earnings from whatever source to the trust. Further, that since the transfer was made prior in time to the actual earning of the income that the assignment of income theory is inapposite. As stated in petitioner's brief he is in full accord with the maxim set forth in Commissioner v. Culbertson, 337 U.S. 733, 739, 740 (1949), that income is taxed to the one who earns it. Further, petitioner agrees with our decision in American Savings Bank v. Commissioner, 56 T.C. 828 (1971), *602 where we held that the entity that controls the earning of the income is the true earner of that income. Since both parties fully agree on the legal principle involved, it only remains for the Court to apply this law to the facts of this case. Based on the terms of the conveyance of September 29, 1972, petitioner transferred his earned or to be earned income. Under these terms petitioner simply conveyed his current and future income and there would be no transfer of the money to the trust until it had been collected. Under these facts the conveyance is a classical case of a taxpayer attempting to transfer the incidence of taxation of his earned income to another entity. Under the terms of the document any income that was earned at the time of the conveyance was assigned to the trust and, in addition, all income to be earned in the future. An assignment which attempts to assign income earned by the taxpayer to another entity falls within the rule set forth above, by the Supreme Court, which states that income is taxed to the one who earns it. The crucial point involved is not the timing of the assignment, but the earning of the income. Under this well-established rule, petitioner *603 cannot escape the burden of taxation on his earned income by the September 29, 1972, assignment to trust. In similar situations we have also held that the conveyance of a taxpayer's lifetime services and the income earned therefrom was simply an assignment of income and ineffective to shift the tax burden from the taxpayer to a trust. Vercio v. Commissioner,73 T.C. 1246, 1254 (1980); Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978). As we said in American Savings Bank v. Commissioner, supra at 839, the factual background must be carefully scrutinized to determine the person that earns the income. Considering all of the factors in the instant case can only lead us to conclude that petitioner was the true earner of the income allegedly earned by the trust. Although the trust may have validity under State law, it did not in fact operate as a separate entity for income tax purposes. There is no evidence that it kept formal records of its operation, that it had a separate office and equipment, that it held itself out to the public as being separate and independent, that it had separate employees, that it had an enforceable *604 contract with petitioner for the use of his services, or that it had any of the customary business characteristics. In essence petitioner simply executed a trust document and agreed to transfer all of his earned income to a trust. Under these circumstances we fail to see an active operating entity capable of independently earning income. In addition, petitioner's arrangement with the trust lacked economic reality. Except for the provision in the Declaration of Trust providing that an individual was to receive "reasonable compensation" for services performed "as may be determined by a MAJORITY of the Board of Trustees," there was no specific agreement with respect to remuneration or compensation to be paid to any individual by the trust. Petitioner, in fact, received no guarantees that he would be the recipient of the disbursements. However, it is unrealistic to conclude that a taxpayer would agree to turn over all of his earned income under such circumstances, unless the taxpayer was actually in complete control of the trust or other entity. Where a trust has no valid purpose other than tax avoidance it loses its economic reality, which, in turn, mandates that we disregard any *605 attempt to shift income to a mere paper entity. [2] See Markosian v. Commissioner, 73 T.C. 1235, 1245 (1980). Section 6653(a) imposes a 5-percent penalty if any part of any underpayment is due to negligence or an intentional disregard of rules and regulations. Petitioner has the burden of proving that his underpayment was not due to negligence or an intentional disregard of rules and regulations. Rule 142(a), Tax Court Rules of Practice and Procedure. The sole evidence offered by petitioner is his testimony that he believed it was within his constitutional rights to establish such a trust. While we are convinced petitioner was sincere in his belief that he could establish such a trust, a reasonably prudent person would not have done so without first seeking competent tax advice. We find that the underpayment *606 for 1975 and 1976 was due to negligence and therefore sustain respondent on this issue. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
*. This report is prepared pursuant to Rule 182(b), Tax Court Rules of Practice and Procedure.↩
1. All section references are to the Internal Revenue Code of 1954, as in effect for the taxable years in issue, unless otherwise noted.↩
2. In addition, since the trust lacked economic reality the interest and dividend income it reported is properly taxable to petitioners. We decide this issue on these grounds without considering respondent's alternative argument, namely, that the interest and dividend income is taxable to petitioners under the grantor trust rules of secs. 671 through 678.↩