PETER Y. TAYLOR, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; THE MELT ORGANIZATION (A Trust), GEORGE T. HORVAT, TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket Nos. 3221-77, 4843-77.
United States Tax Court
T.C. Memo 1980-552; 1980 Tax Ct. Memo LEXIS 32; 41 T.C.M. (CCH) 539; T.C.M. (RIA) 80552; December 15, 1980
Peter Y. Taylor, Sr., pro se. Joseph R. Peters, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were tried before Special Trial Judge Marvin F. Peterson pursuant to Rule 180, Tax Court Rules of Practice and Procedure. His report was served on the parties on August 28, 1980. Petitioner Peter Y. Taylor, Sr. filed exceptions to the conclusions of the Special Trial Judge. After consideration, the Special Trial Judge's report, which is set forth below, has been adopted with some modifications. REPORT OF SPECIAL TRIAL JUDGE [1]
PETERSON, Special Trial Judge: In these consolidated cases respondent determined the following deficiencies and additions to tax under section 6651(a)(1): [2]
Taxable
Addition to Tax
Petitioner
Year
Deficiency
(Sec. 6651(a)(1))
Peter Y. Taylor, Sr.
1972
$ 432.54
$ 0
(Docket No. 3221-77)
1973
1,144.80
286.20
1974
142.34
37.67
The Melt Organization
1973
946.83
236.71
(A Trust) (Docket No.
4843-77)
*35 Due to petitioner's concession that the delinquency penalty was properly asserted by respondent, the issues for decision are (1) whether petitioner Peter Y. Taylor, Sr. or a trust is taxable on certain consulting fees earned during the year which were assigned to a trust; and (2) in the alternative, if the fees are taxable to the trust, whether the trust is an association taxable as a corporation under section 7701. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioner Peter Y. Taylor, Sr., the petitioner in docket no. 3221-77, resided in Milwaukee, Wisconsin, at the time of filing his petition herein. Petitioner filed a joint Federal income tax return with his spouse for each of the taxable years 1972, 1973, and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. The income tax return for the year 1973 was filed on January 3, 1975, and the income tax return for the year 1974 was filed on July 2, 1975. Petitioner, The Melt Organization (A Trust), George T. Horvat, Trustee, the petitioner in docket No. 4843-77, had its principal office in Milwaukee, Wisconsin, at the time of filing its petition herein. *36 The trust filed its Federal income tax return for the taxable year 1973 with the Internal Revenue Service Center, Kansas City, Missouri. The income tax return was filed on January 6, 1975. On February 29, 1972, petitioner Peter Y. Taylor, Sr. (hereinafter petitioner) executed a document entitled "Declaration of Trust of this Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as The Melt Organization (A Trust) (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept the exclusive use of Peter Y. Taylor's lifetime services including ALL his earned remuneration from ALL his outside sources of remuneration derived from his full-time employment as a bona fide Consumer's Consultant in the fields of Insurance, Taxation, Economics, Business Management, from the date of THIS CONTRACT * * *." The initial trustees were George T. Horvat, a good friend of petitioner, and Kenneth Warford, a long-time acquaintence of Mr. Horvat. At the first meeting of the trustees on February 29, 197i, three additional trustees were appointed who were the petitioner's wife Mary E. Taylor, and his two children Peter Y. Taylor, Jr. *37 and Eileen D. Moore. On March 1, 1972, Mary E. Taylor was appointed Trust Manager by the trustees and authorized to open a trust bank account. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. On March 1, 1972, petitioner executed a document which irrevocably conveyed to the Trust "[A]ll my earned and to be earned remuneration and ALL my right, title and interest in such earnings from my services rendered or to be rendered * * *." Specifically, the document provided that "* * * All Servicemaster of West Allis, Inc.'s checks, made payable to Peter Y. Taylor, Sr. will henceforth be endorsed over to and deposited to the account of the above named Trust * * *." In return petitioner received all 100 units of beneficial interest in the Trust. Shortly thereafter petitioner returned his certificate of ownership of 100 units of beneficial interest for cancellation and for reissuance of 30 units to each of his three children and 10 units to his wife. All distributions to the beneficiaries were discretionary with the trustees *38 as recorded in the Trust minutes. Since its creation no additional personal or real property has been transferred to the Trust and no distributions have been made to the beneficiaries. During the year 1972 petitioner Peter Y. Taylor, Sr. received income for janitorial services from Servicemaster of West Allis, Inc. (Servicemaster) in the amount of $ 1,538 and from Alternative, Inc. in the amounts of $ 200 in 1973 and $ 3,275 in 1974. Petitioner directly received payment from Servicemaster by check which was subsequently transferred to the Trust by endorsement. The other amounts were received from persons who came to petitioner for consumer consulting services. Pursuant to petitioner's direction, payments for such services were made directly to the Trust. Alternative, Inc. was incorporated in 1973 for the purpose of conducting services for persons who created family trusts. During the years 1973 and 1974 the Melt Organization owned 99.36 percent and 91.41 percent, respectively, of the outstanding stock of Alternative, Inc. Corporate income tax returns for Alternative, Inc. were filed with the Internal Revenue Service Center at Kansas City, Missouri, for the taxable years *39 ended June 30, 1974 and June 30, 1975. In 1970 petitioner Peter Y. Taylor, Sr. created Apocalypse Limited, a corporation, for the purpose of teaching financial freedom. The Melt Organization was created to perform services for Apocalypse Limited by selling tax savings plans through the use of family trusts. In his notice of deficiency dated December 30, 1976, to Peter Y. Taylor, Sr. and his deceased wife, Mary E. Taylor, respondent determined that the "wages attributable" to Peter Y. Taylor, Sr. from Servicemaster and Alternative, Inc. were taxable to him under section 61 of the Code and not to the Trust. Alternatively, he determined that the "wages" were reportable and taxable to petitioner pursuant to sections 671 through 678 or that the assignment of the wages to the Trust was a sham, lacking economic reality for Federal income tax purposes. It was also determined that the payments made by Alternative, Inc. to the Trust constituted dividend income to petitioner under section 301. In the notice of deficiency to The Melt Organization (A Trust) dated February 16, 1977, the respondent determined that the Trust was an association taxable as a corporation under section 7701. *40 OPINION The first issue for decision is whether the payments made for consulting services earned by petitioner are properly income of the petitioner or the Trust. Respondent contends that petitioner is taxable on all of the amounts because he earned the income and that any assignment to the Trust did not effectively transfer the incidence of taxation to the Trust. Alternatively, respondent contends (1) that the Trust should be ignored because it lacks economic reality; (2) that the income should be taxed to petitioner under the grantor trust rules of sections 671 through 678; and (3) that the Trust is an association taxable as a corporation under section 7701. Petitioner agrees that the income was earned through his personal services, but he contends that the document of March 1, 1972, which conveyed "* * * [his] earned and to be earned remuneration * * *", did transfer, as of the date of the document, his earnings from whatever source to the Trust. Since the transfer was made prior in time to the actual earning of the income, he argues that the assignment of income theory is inapposite. At the trial the petitioner maintained that the creation of the Trust was analogous *41 to the formation of professional service corporations which have been recognized by the respondent and the courts for Federal income tax purposes. However, petitioner gave a negative response to the Court's question when asked whether he desired to have the Trust treated as a corporation for income tax purposes. Petitioner's brief states that he is in full accord with the principle set forth in Commissioner v. Culbertson, 337 U.S. 733, 739, 740 (1949), that income is taxed to the one who earns it. Petitioner also agrees with our decision in American Savings Bank v. Commissioner, 56 T.C. 828 (1971), where we held that the entity that controls the earning of the income is the true earner of that income. Since both parties fully agree on the legal principle involved, it only remains for the Court to apply the law to the facts of this case. Under the terms of the conveyance of March 1, 1972, petitioner transferred his earned and to-be-earned income to the Trust. By these terms there was to be no transfer of earnings to the Trust until the money had been collected. As stated in our findings, petitioner was paid for his services by Servicemaster, *42 and he endorsed the payments to the Trust. Other sums for consulting fees were paid at petitioner's direction to the Trust. Thus, the conveyance is a classic case of a taxpayer attempting to shift the incidence of taxation of his earned income by assigning it to another entity. The assignment clearly falls within the rule that income is taxed to the one who earns it. The crucial point is not the timing of the assignment but the earning of the income. Under this well established rule the petitioner cannot escape the burden of taxation on his earned income by the March 1, 1972, assignment to Trust. In a long list of similar cases we have held that the conveyance to a trust of a taxpayer's lifetime services and the income earned from such services was not effective to shift the tax burden from the taxpayer to a trust. See, e.g., Verciov. Commissioner, 73 T.C. 1246, 1254 (1980); Markosian v. Commissioner, 73 T.C. 1235 (1980); Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980); affg. T.C. Memo. 1979-164; Horvat v. Commissioner, T.C. Memo. 1977-104, *43 affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); and Taylor, Jr. v. Commissioner,T.C. Memo. 1980-313. We reach the same conclusion here. As we said in American Savings Bank v. Commissioner, supra at 839, the factual background must be carefully scrutinized to determine the person that earns the income. After considering all of the facts here, we conclude that the petitioner was the true earner of the income allegedly earned by the Trust. Although the Trust may have validity under state law, it did not in fact operate as a separate entity for Federal income tax purposes. There is no evidence that it kept formal records of its operation, that it had a separate office and equipment, that it held itself out to the public as being separate and independent, that it had separate employees, that it had an enforceable contract with petitioner for the use of his services, or that it had any of the customary business characteristics. In essence, petitioner simply executed a trust document and agreed to transfer all of his earned income to a trust. Under such circumstances we hold that there was no *44 active operating entity capable of independently earning income. In addition, based on petitioner's statement in his brief that the Board of Trustees by voice vote agreed to remunerate him for his services rendered in proportion to the Trust income developed by his services, we think his arrangement with the Trust lacked economic reality. Not only is such an indefinite and loose agreement unenforceable, but it is unrealistic to conclude that a taxpayer would agree to turn over all of his earned income for an unspecified payment under such circumstances unless he was in control of the trust or other entity. Where a trust has no valid purpose other than tax avoidance it loses its economic reality, which, in turn, mandates that we disregard any attempt to shift income to a mere paper entity. See Markosian v. Commissioner, supra at 1245. The facts relating to amounts of other income, presumably self-employment income and not wages, generated by petitioner Peter Y. Taylor, Sr. are not fully developed by this record. Nevertheless, we think it is clear that, even if the Trust had any economic substance, the grantor trust provisions of sections 671 through 677 require *45 this other income to be taxed to petitioner. Vnuk v. Commissioner, supra at 1321; Vercio v. Commissioner, supra at 1255-1259; Wesenberg v. Commissioner,supra at 1011-1014. Having sustained respondent's determination that all of the income reported by the petitioner and the Trust was properly includable in petitioner's income, it is unnecessary for us to decide whether the Trust is an association taxable as a corporation. To reflect the conclusions reached herein, Decisions will be entered under Rule 155. Footnotes
1. This report was prepared pursuant to Rule 182(b), Tax Court Rules of Practice and Procedure.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩