ROBERT A. BRONCATTI, SR. AND AUDREY BRONCATTI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Broncatti v. Commissioner
Docket No. 12164-78.
United States Tax Court
T.C. Memo 1981-452; 1981 Tax Ct. Memo LEXIS 297; 42 T.C.M. (CCH) 826; T.C.M. (RIA) 81452; August 24, 1981. *297 Petitioners, husband and wife, created two trusts. They purportedly conveyed their lifetime services and other personal property to one of the trusts and their residence to the other. Petitioner husband also created a third trust to which he purportedly conveyed a personal automobile. The trust documents for each trust granted petitioners, as trustees, the authority to distribute all trust income to themselves without the approval or consent of an adverse party. Held, the purported conveyances of lifetime services by petitioners were merely assignments of income which were ineffective to shift the incidence to taxation from petitioners to the trust. Held further, petitioners, as grantors, are treated as the owners of the first and second trusts, and petitioner husband is treated as the owner of the third trust. Sec. 677, I.R.C. 1954. Held further, petitioners are liable for additions to tax under sec. 6653(a), I.R.C. 1954. Robert A. Broncatti, Sr. and Audrey Broncatti, pro se. Mark D. Petersen, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent, in his notice of deficiency dated July 31, 1978, determined deficiencies in petitioners' *298 1975 and 1976 Federal income taxes and additions to tax under section 6653(a), I.R.C. 1954, as follows: Addition to tax under
Year
Deficiency
sec. 6653(a)
1975
$ 2,151
$ 108
1976
5,218
261
The issues for our decision are: (1) whether the attempted conveyance of petitioners' lifetime services to a family trust was effective to relieve petitioners of liability for income taxes on a portion of their earnings; (2) alternatively, whether petitioners are to be treated as owners of the purported family trusts under sections 671 through 677; (3) alternatively, whether "family trusts" purportedly created by petitioners are entitled to be treated as entities separate and distinct from the petitioners; and (4) whether petitioners are liable for additions to tax for 1975 and 1976 due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners Robert A. Broncatti, Sr. and Audrey Broncatti, husband and wife, resided in Milwaukee, Wisconsin at the time the petition *299 as filed herein. They filed joint Federal income tax returns for the calendar years 1975 and 1976 with the Internal Revenue Service Center in Kansas City, Missouri. At all times material to this case, petitioner Robert A. Broncatti, Sr. was an employee of Hickey Cartage of Indiana, Inc., Meurer Bakeries and Local 200 of the Teamsters Union. Petitioner Audrey Broncatti was an employee of the Board of School Directors in Milwaukee, Wisconsin. During the years in issue, petitioners had two adult children, Nicholas A. and Anthony J. Broncatti, and four minor children, Robert A., Jr., Donald J., Nancy J. and Ann M. Broncatti. On June 30, 1975 petitioners executed preprinted documents entitled "Declaration of Trust of this Constitutional Trust." These documents purportedly created three separate trusts: Brandant System (A Trust), Brandant Homestead (A Trust), and Brandant Transport (A Trust). The purpose of each trust, as set forth in the trust documents, was as follows: [Brandant Systems (A Trust)] TRUSTEES' DECLARATION OF PURPOSE OF THIS CONSTITUTIONAL TRUST
SHALL BE to accept from Robert A. Sr. and Audrey S. Broncatti the exclusive use of their lifetime services including all their *300 earned remuneration from any outside source which is consistent with the purport of this trust and this trust indenture; together with other certain items of their personal property. In consideration for this freely entered into and equitable CONTRACT, for the above mentioned personal property irrevocably conveyed which comprises the INITIAL CAPITAL of this newly created business entity, the Accepting Trustees will exchange and Robert A. Sr. and Audrey S. Broncatti will accept ALL the beneficial interests of this Trust; so that the Robert A. Broncatti, Sr. Family can maximize their lifetime efforts through the utilization of ALL their Constitutional Rights, in their pursuit of happiness and their desire to promote the general welfare of ALL their fellow citizens of the United States of America. [Brandant Homestead (A Trust)] TRUSTEES' DECLARATION OF PURPOSE OF THIS CONSTITUTIONAL TRUST
SHALL BE to accept title in FEE SIMPLE and become the sole-owner operator of certain (land(s) and building(s), assuming full responsibility for the mortgage(s), ALL real estate taxes, repair & maintenance and ALL insurance as of the date of irrevocable conveyance from Robert A. Sr. and Audrey S. Broncatti *301 to THIS TRUST; in a fair and equal exchange for ALL the beneficial interests of THIS TRUST; in order to assure adequate housing and office facilities for the Robert A. Sr. and Audrey S. Broncatti Family Organizations and/or other legal persons, at a reasonable cost. [Brandant Transport (A Trust)] TRUSTEES' DECLARATION OF PURPOSE OF THIS CONSTITUTIONAL TRUST
SHALL BE to supply and provide ALL necessary transportation and ALL incidents thereto for (ONLY) the Trust Manager and the Trust Secretary, and at the discretion of a MAJORITY of the Board of Trustees of THIS TRUST, to other officers, executives or agents of The BRANDANT SYSTEM (A Trust), and/or other legal persons; under conditions of contract mutually agreed upon and accepted by the MAJORITY of the Members of the Board of Trustees of THIS TRUST and other appropriate persons, officers or agents. The trusts otherwise contained identical provisions, which are, in pertinent part, set forth below: The above named Trustees, for themselves and their successors in Trust, do hereby accept the IRREVOCABLE conveyance in trust and acknowledge delivery of all the property specified, together with all the terms of the Trust herein set forth, *302 agreeing to conserve and improve the Trust, to invest and reinvest the funds of said Trust in such manner as will increase the financial rating of the Trust (estate) during the period of outstanding liabilities of the various properties and enterprises in commerce for gain, exercising their best judgment and discretion, in accordance with the Trust minutes, making distributions of portions of the proceeds and income as in their discretion, and according to the minutes, should be made, making complete periodic reports of business transactions, and upon final liquidation distributing the assets to the beneficiaries as their interests may appear; and in all other respects administering said Trust (estate) in good faith strictly in conformity hereto. The signing and acknowledging of this Agreement by such initial Trustees or the signing and acknowledging of appropriate minutes by Trustees subsequently elected or appointed, shall constitute their acceptance of this Trust; and the Trust property, assets and emoluments thereof shall immediately vest in the new Trustee or Trustees without any further act or conveyance. Resolutions of the Board of Trustees authorizing a special thing to be *303 done shall be evidence that such act is within its power. Any one lending or paying money to the Board of Trustees shall not be obliged to see the application thereof, all funds paid into the treasury are and become a part of the CORPUS of the Trust. ADMINISTRATION The Trustees shall regard this instrument as their sufficient guide, supplemented from time to time by resolutions of their Board [said resolution to be ratified ALWAYS by a MAJORITY of the Board of Trustees then in office and participating in the issuing meeting] covering contingencies as they arise and recorded in the minutes of their meetings, or by by-laws, rules or regulations, as deemed expedient and consistent with the orderly conduct of business. OFFICERS and MANAGEMENT The Trustees may in their discretion elect among their number a President, Secretary and Treasurer, or any other officers they may deem expedient for proper functioning. * * * EXPENDITURES The Trustees shall fix and pay compensation of all officers, employees or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by a MAJORITY of the Board of Trustees. DOCUMENT It is expressly *304 decalred [sic] that a Trust, and not a partnership, is hereby created; and that neither the Trustees, officers, or certificate holders, present or future, have or possess any beneficial interest in the property or assets of said Trust, nor shall they be personally liable hereunder, as partners or otherwise; that no Trustee shall be liable for the act or omission of his or her Co-Trustee, or any other person, whatsoever, whether employed by such Trustee or not, or for anything other than his own, personal breach of Trust. CERTIFICATES of INTEREST For convenience the equitable interests for distribution shall be divided into One Hundred (100) units * * *. DEATH - INSOLVENCY - BANKRUPTCY Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to the Trust property, nor any undivided interest therein, nor in the management thereof, nor shall the death of a holder entitle his heirs or legal representatives to demand any partition of division of the property of the Turst [sic] * * *. DURATION - CLOSURE This Trust shall continue for a period of twenty-five years from date, unless the Trustees shall unanimously determine upon an earlier date. The Trustees *305 may at their discretion, because of threatened depreciation in values, or other good and sufficient reason, liquidate the assets, distribute and close the Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries. * * * The initial trustees of the purported trusts were petitioners' two sons, Nicholas A. and Authony J. On June 30, 1975 petitioners filled out a preprinted form which purported to be minutes of the first meeting of the Brandant System (A Trust) Board of Trustees. Pursuant to this document, three additional persons, the petitioners and Mary Taylor (the wife of the author of the purported trusts) were elected trustees of such trust. [1] At this same meeting, the trustees agreed to accept petitioners' "lifetime services including all his [her] earned remuneration from any outside source" and certain other personal property belonging to petitioners. Such other personal property included petitioners' home furnishings, tools and related items. In exchange, petitioners received 100 units of beneficial interest, which constituted all the units of beneficial ownership of the trust. The minutes *306 continued by providing that the conveyances contemplated therein would not be "consummated by sale, gift, bargain, grant or deed. On July 1, 1975 petitioners each executed a "Conveying Agreement" and, in concert, executed a "Bill of Sale" purporting to affect the aforementioned conveyances. In return, petitioners each received 50 units of beneficial interest of the Brandant System (A Trust). At a trustees meeting for the Brandant System (A Trust) on July 1, 1975, petitioner Rober A. Broncatti, Sr. allegedly was elected to be so-called "Trust Manager." The duties of the "Trust Manager" were to handle the day-to-day operations of the Trust. In addition, petitioner Audrey Broncatti purportedly was elected by the trustees to be "Trust Secretary" whose duties were to maintain trust records. [2] With respect to the Brandant System (A Trust), petitioners purportedly were bound by employment contracts to perform services as manager and secretary for their natural *307 lives in exchange for remuneration in the form of management fees and payment by the trust of petitioners' personal expenses. At a trustees meeting on July 4, 1975 petitioners had the trustees of Brandant System (A Trust) cancel the 50 units that each of the petitioners owned and convey 25 units to each of their minor children. The beneficial units were evidenced by certificates which stated, in part: This Certificate conveys no interest of any kind in the Trust assets, management or control thereof. Benefits hereby conveyed consist solely of the emoluments as distributed by the actions of the trustees and nothing more. Also, the minutes of this meeting stated that-- a. Beneficial Certificates convey NO legal title or beneficial interest in and to the Trust Corpus [assets], nor any undivided interest therein, except in the event of CLOSURE. b. Beneficial Certificates convey NO voice in the management or control of the Trust. c. Beneficial Certificates DO CONVEY a right to receive the certificate's Pro Rata share of emoluments that *308 MAY BE distributed by the action of the MAJORITY of the Trustees. d. Beneficial Certificates are non-taxable as personal property, non-assessable, non-negotiable, but are transferable and unimpeachable, except for fraud. These same minutes went on to provide: That, the prime responsibility of the Board of Trustees is to manage THIS TRUST, its business and its corpus in such a manner as to assure the maximum possible comfort and support and peace of mind for the immediate, blood members of The Robert A. Sr. & Audrey S. Broncatti Family as is possible. * * * The Brandant Homestead (A Trust) issued all of its 100 units of beneficial interest to petitioners, 50 units each, in exchange for the transfer of petitioners' personal residence to the trust, purportedly accomplished pursuant to a Quitclaim Deed dated July 1, 1975. The Brandant Transport (A Trust) issued all of its 100 units of beneficial interest to petitioners, 50 units each, in exchange for a purported transfer of petitioners' personal automobile to the trust. Petitioners determined that the trusts would, and in fact did, file their fiduciary returns on a calendar year basis. Accordingly, the first taxable year of each *309 trust spanned the period from July 1, 1975 to December 31, 1975. Expenditures for all of the so-called trusts were disbursed from a checking account which was in the name of the Brandant System (A Trust). The petitioners, as officers and trustees, had discretionary authority to expend moneys from the account. Indeed, only petitioners possessed such authority because they were the only individuals authorized to transact business on the account. During the years in issue petitioners exercised this authority to pay their personal expenses. For instance, checks were disbursed to Brandant Homestead (A Trust) and Brandant Transport (A Trust) and the amount of these were reported by the trusts as rental income. Brandant Homestead (A Trust) used these funds to maintain petitioners' personal residence. Similarly, Brandant Transport (A Trust) used these funds to maintain petitioners' automobile. On their fiduciary income tax returns for the years in issue, the trusts deducted the maintenance expenses [3] and reported depreciation deductions for the respective assets. Beginning in July 1975 petitioners *310 transferred the salaries they received from their employers to the Brandant System (A Trust). [4] These transferred salaries, totaling $ 10,332.54 in 1975 and $ 21,383.05 in 1976, were not reported as income on petitioners' Federal income tax returns for those years. Rather, such amounts were included in the computation of income by the Brandant System (A Trust) for the years in issue. [5]
Petitioners reported income from trust remunerations of only $ 1,149.73 in 1975 and $ 9,207.36 in 1976. Brandant System (A Trust) deducted such amounts from income in those years. Petitioners arrived at these income figures based upon their perceptions regarding what they considered to be their "fair share of taxes." During the years in issue, Brandant System (A Trust) distributed checks *311 to its beneficiaries, petitioners' minor children. [6] Generally, these checks were deposited in petitioner Audrey Broncatti's personal bank account. The distributed moneys then were used to support petitioners' family (i.e., for food and clothing). Despite the alleged transfer of petitioners' property, including their house, furnishings, tools and automobile, to the purported trusts, petitioners use of these personal items remained unchanged. Also, petitioners' relationships with their employers did not change (i.e., their duties remained the same). In point of fact, the financial affairs that petitioners allegedly were handling on behalf of the trusts were the same as petitioners' financial affairs prior to the introduction of the trusts. In his notice of deficiency for the years 1975 and 1976 respondent determined that all income from wages and other miscellaneous income and deductions reported by the trusts [7] *312 were reportable by the petitioners. Respondent also determined that the additions to tax under section 6653(a) applied to the years in issue. OPINION Respondent attacks petitioner's' purported "family trust" arrangement on several grounds including: (1) the assignment of income doctrine, (2) the grantor trust provisions (sections 671 through 677), and (3) sham transaction and lack of economic reality theories. With respect to the first ground, respondent contends that wages earned by petitioners were income of petitioners and not the trust. Petitioners, on the other hand, contend that they have a constitutional right to contract and arrange their affairs to minimize their tax burden. They contend that they have done just that. Further, petitioners argue that respondent has been arbitrary in his determination because respondent was acting in contravention of the Constitution. We see no need to venture through a *313 lengthy analysis of the opposing positions as we are dealing here with some of the most elementary principles of the tax laws. Clearly, petitioners have the right under the Constitution and the law of contracts to create the trusts and purportedly to convey the exclusive use of their lifetime services thereto. However, the tax law is equally clear that compensation for services is taxable to the person who earns it. Lucas v. Earl, 281 U.S. 111 (1930). Under circumstances indistinguishable from the instant case, this and other courts have held that petitioners were taxable on their full salaries under assignment of income principles. Vnuk v. Commissioner, 621 F.2d 1318, 1320-1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Horvat v. Commissioner, 582 F.2d 1282 (7th Cir. 1978), affg. a Memorandum Opinion of this Court, cert. denied 440 U.S. 959 (1979); Vercio v. Commissioner, 73 T.C. 1246, 1254 (1980); Wesenberg v. Commissioner, 69 T.C. 1005, 1011 (1978). [8] *314 For the same reasons expressed in those cases, petitioners' purported conveyance of the exclusive use of their lifetime services to the Brandant System (A Trust) is ineffective to shift petitioners' tax burden to the trust. Rather than acting arbitrarily and in violation of the Constitution as petitioners assert, respondent is properly carrying out his duties of administering the tax laws by making such a determination. Therefore, we concur with respondent's determination and hold that wages earned by petitioners were properly includable in their income. Turning to the second ground, respondent claims that petitioners were the owners of the subject trusts within the meaning of sections 671 through 677. Accordingly, respondent contends that income and expense items, as allowed by respondent, were reportable for Federal income tax purposes by the petitioners and not the trusts. [9]
Generally, sections 641 through 668 control the income taxation of trusts as entities separate and distinct *315 from the grantor. However, where the grantor retains certain specified powers over the trust, which are enumerated in sections 673 through 677, he will be treated as the owner of that portion of the trust over which such powers are exercisable. As a consequence of this ownership designation, section 671 provides in pertinent part as follows: SEC. 671. TRUST INCOME, DEDUCTIONS, AND CREDITS ATTRIBUTABLE TO GRANTORS AND OTHERS AS SUBSTANTIAL OWNERS. Where it is specified in this subpart [sections 671 through 678] that the grantor * * * shall be treated as the owner of any portion of a trust, there shall then be included in computing the taxable income and credits of the grantor * * * those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account under this chapter [sections 1 through 1388] in computing taxable income or credits against the tax of an individual. In other words, an item of income, deduction or credit will be treated as if it had been received or paid directly by the grantor if the grantor is considered the "owner." Section 1.671-2(c), Income Tax Regs. *316 Petitioners contend that they have not retained any of the tainted powers over the trusts. [10] However, they have not challenged respondent's determination of the amount of income, deductions or credits reportable by petitioners should they be treated as "owners" under the aforementioned sections. Moreover, respondent appears to have property taken into account the various items of income, deductions and credits reported by the trusts in calculating the deficiency under the grantor trust provisions. Therefore, should we find that petitioners were the owners of the subject trusts within the meaning of the grantor trust provisions, then respondent's determination must be sustained with respect to this issue. Section 677(a) describes one of the tainted powers as follows: SEC. 677. INCOME FOR BENEFIT OF GRANTOR. (a) General Rule.--The grantor *317 shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be-- (1) distributed to the grantor or the grantor's spouse; The term "adverse party" is defined in section 672(a) to mean "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise on nonexercise of the power which he possesses respecting the trust." Whether the economic arrangements of a trust cause a trustee or other individual to be an adverse party is essentially a factual question dependent on the merits of each particular case. Paxton v. Commissioner, 520 F.2d 923, 925 (9th Cir. 1975). Respondent has contended that the trustees of the three trusts were nonadverse parties to the grantors. Petitioners have the burden to prove that respondent's determination is incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure; Wlch v. Helvering, 290 U.S. 111 (1933). In the instant case, petitioners were joint grantors of the Brandant System (A Trust) and the Brandant *318 Homestead (A Trust) while petitioner Robert A. Broncatti, Sr. was the grantor of the Brandant Transport (A Trust). Petitioners were members of the boards of trustees of such trusts. Under the terms of the trusts, the powers of the boards of trustees were expressed in the broadest of terms, e.g., "Resolution of the Board of Trustees authorizing a special thing to be done shall be evidence that such act is within its power." There can be no doubt that acting as a majority, the boards of trustees had the power to distribute the entire income generated by each trust's corpus to the grantor or the grantor's spouse. Consequently, the only remaining precondition to having the petitioners treated as the owners of the trusts is whether the boards of trustees could have acted without the approval or consent of an adverse party. The answer is obvious. The trustees, other than petitioners, were Mary Taylor and petitioners' sons, Nicholas A., Anthony J. and Robert A., Jr. Clearly, Mary Taylor, Nicholas A. and Anthony J. were nonadverse parties because they had no direct beneficial interest in the subject trusts. See Wesenberg v. Commissioner, supra at 1012. In addition, based upon our reasoning *319 in Vercio v. Commissioner, supra at 1257-1259, it is clear that Robert A. Broncatti, Sr. and Audrey Broncatti were not adverse parties to one another. [12] Therefore, because the majority of the trustees on each board, including petitioners and other nonadverse parties, could have caused all of the income of the trusts to be distributed to the petitioners, we hold that the petitioners shall be treated as the "owners" of the trusts under section 677(a). Accordingly, respondent's determination is sustained.
The final issue for our decision is whether petitioners are liable for additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations as determined by respondent. Petitioners have the burden of proving that respondent's determination was erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, supra. Petitioners claim that the instant case involved a good faith controversy with respect to whether they had the constitutional right to establish the three trusts. They contend that they are following *320 a technique of minimizing taxes that has been approved for other income earners. They are in error. The law is clear that no one can avoid taxation by assigning income or creating trusts that change "nothing." Further the law clearly does not permit each taxpayer to make his own determination with respect to what represents his fair share of taxes. We therefore sustain respondent's imposition of the addition to tax under section 6653(a) for the years in issue. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. In 1976 Mary Taylor died and was replaced as trustee (on Nov. 9, 1976) by another of petitioners' sons, Robert A., Jr. During the period of time material to this case, the same persons were trustees of the purported trusts at issue.↩
2. Petitioners allegedly were elected to the same positions by the trustees of the Brandant Homestead (A Trust) and the Brandant Transport (A Trust).↩
3. Maintenance expenses included interest, taxes, insurance and repairs and maintenance.↩
4. The employers considered the petitioners to be their employees. The trusts had no contact with the employer. Salary checks were made payable to one of the petitioners. ↩
5. The Brandant System (A Trust) deducted Federal and state taxes withheld from petitioners' payroll checks in arriving at trust income. In 1976 the purported trusts also reported income of $ 468 from a state tax refund and $ 34 of interest income.↩
6. There were no distributions to beneficiaries or remuneration to petitioners from the other two trusts.↩
7. Besides petitioners' wages, respondent determined that petitioners were required to report the following additional items of income: 1975
1976
State tax refund
$ 468.00
Interest
34.00
$ 502.00
In addition, respondent determined that petitioners were entitled to the following deductions: ↩
Trustee and officer remuneration
$ 1,149.73
$ 9,207.36
State income tax withholding
475.13
1,085.39
Taxes
276.21
673.11
Interest
63.36
542.07
Deductions
$ 1,964.43
$ 11,507.93
8. See also Bolter v. Commissioner, T.C. Memo. 1981-378; Cooper v. Commissioner, T.C. Memo. 1981-369; Palmer v. Commissioner, T.C. Memo. 1981-354; Thelen v. Commissioner, T.C. Memo. 1981-302; Wenger v. Commissioner, T.C. Memo. 1981-266; Donovan v. Commissioner, T.C. Memo. 1981-150↩.
9. Because other items of income and deductions besides petitioners' wages are at issue herein, we are compelled to discuss this second ground. See n. 7.↩
10. Petitioners also allege various constitutional violations which we find spurious and without substance. See Reinecke v. Smith, 289 U.S. 172, 177-178 (1933); Corliss v. Bowers, 281 U.S. 376, 377-378 (1930); Swallow v. United States, 325 F.2d 97, 98 (10th Cir. 1963), cert. denied 377 U.S. 951 (1964); Wright v. Commissioner, T.C. Memo. 1981-65↩.
12. The resolution of the question whether Robert A., Jr. is an adverse party is inconsequential to our decision herein.↩