L. DARRYLE GIBSON AND PATSY LOYCE GIBSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; J. GAYLE GIBSON AND ROBERTA GIBSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gibson v. Commissioner
Docket Nos. 4528-79; 4538-79
United States Tax Court
T.C. Memo 1982-374; 1982 Tax Ct. Memo LEXIS 372; 44 T.C.M. (CCH) 359; T.C.M. (RIA) 82374; July 1, 1982
Gloria T. Svanas, for the petitioners. Cynthia J. Olson, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: These cases were assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, [1] and Rule 180. [2] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. *375 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: L. Darryle Gibson and Patsy Loyce Gibson: Docket No. 4528-79 Year
Deficiency
1975
$ 8,044.74
1976
9,326.90
J. Gayle Gibson and Roberta Gibson: Docket No. 4538-79 Year
Deficiency
1975
$  7,404.81
1976
10,642.02
The issues for decision in each of these consolidated cases are: (1) whether certain income is taxable to the petitioners or to a so-called family trust; (2) whether the cost of purchasing a family trust package from Educational Scientific Publishers is a tax deductible expense; and (3) whether petitioners have proved that respondent's other determinations are incorrect. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The two stipulations of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Guymon, Oklahoma, at the time their petitions were filed. Each set of petitioners filed joint individual income tax returns for the taxable years 1975 and 1976. Petitioners J. Gayle Gibson *376 (Gayle) and L. Darryle Gibson (Darryle) are identical twin brothers. Gayle and Darryle are dentists. No occupation is shown on the 1975 and 1976 income tax returns for Gayle's wife, petitioner Roberta Gibson (Roberta). Darryle's wife, petitioner Patsy Loyce Gibson (Patsy) is listed as a "Bookkeeper" on the 1975 return but no occupation is shown on the 1976 return. In the early 1970's, Gayle and Darryle formed Gibson & Gibson, Inc., (G&G, Inc.) a professional corporation organized under the laws of Oklahoma, for their dental practice. During the years at issue, Gayle was president and Darryle was secretary of the professional corporation. In 1975, Gayle and Roberta purchased materials from Educational Scientific Publishers (ESP) to establish the J. Gayle Gibson Equity Trust (Gayle Trust). Gayle and his wife allegedly paid ESP $ 5,232.50 for these materials. In 1975, Darryle and Patsy purchased materials from ESP to establish the L. Darryle Gibson Equity Trust (Darryle Trust). Darryle and his wife allegedly paid ESP $ 3,322.50 for these materials. Both sets of petitioners claimed deductions for the payments to ESP. In January 1975, Gayle and Darryle each executed a Declaration *377 of Trust for their respective trusts. Petitioners used preprinted documents purchased from ESP to create the trusts and take related actions. The declared purpose of the Gayle Trust was: to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that J. Gayle Gibson (Grantor-Creator's Name) can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which J. Gayle Gibson (Grantor-Creator's Name) feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. The declared purpose of the Darryle Trust was identical except that Darryle's full name is filled in the two spaces where Gayle's full name appears. In January 1975, petitioners executed a series of documents. Roberta purported to *378 convey to Gayle, and Patsy purported to convey to Darryle, all their respective rights in certain real and personal properties and "the exclusive use of [their respective] lifetime services and all of the currently earned remuneration therefrom and from any source whatsoever." Then Gayle and Darryle each purported to convey to their respective trusts "the exclusive use of [their respective] lifetime services and all of the currently earned remuneration accruing therefrom," as well as "the exclusive use of the lifetime services of [their respective wives] and all currently earned remuneration accruing therefrom." Gayle and Darryle each also purported to convey certain items of real and personal property, including their personal residences and their 50 percent undivided interest in 10 acres of land on which they grew wheat, to their respective trusts. In return for the purported transfers to the trusts, petitioners received beneficial units in the respective trusts. The beneficial interests in each trust were divided into 100 units by certificates, which were forms preprinted by ESP. Ownership of a beneficial certificate did not give the holder any interest of any kind in *379 the Trust assets, management or control thereof. This was set forth in the certificates of beneficial interest which state that the benefits conveyed consisted solely of the "emoluments as distributed by the action of The Trustees and nothing more." The certificates were transferable and in fact various transfers of the units were made. In January 1975, a certificate of 100 units of beneficial interest in each trust was issued to the respective male petitioner. On the same day, each of the certificates of 100 units was cancelled and each female petitioner received a certificate of 50 units in the trust named after her husband. On the same day, each male petitioner received a certificate of 50 units which certificates were cancelled and 10 units were issued to each of the five children of the father after whom the trust was named. During the years in issue, the Trustees of the Gayle Trust were Gayle, Roberta and Darryle and the Trustees of the Darryle Trust were Darryle, Patsy and Gayle. A majority of the Trustees was required to conduct trust business under both trusts. Bank accounts were opened in the names of the Gayle Trust and Darryle Trust. Gayle and Roberta had signature *380 authority over the account of the Gayle Trust. Darryle, Patsy and Gayle had signature authority over the bank account of the Darryle Trust. After creation of the trusts, G&G, Inc. purported to contract with the respective trusts for the "dental services" of Gayle and Darryle. [3] In return for the doctor's services, G&G, Inc., agreed to pay to the respective trusts "the sum of $ per year, payable at the rate of $ 2,400-$ 3,200 per month" plus bonuses (referred to herein as the "contract" income). This contract income, together with the income from the sale of wheat grown on the 10 acres, was reported on the Forms 1041 filed by the respective trusts. Gayle and Darryle reported no income from the dental practice on their individual returns. They reported management and consulting fees purportedly received from the trusts. After creation of the trusts, Gayle and Darryle continued to hold their positions as president and secretary, respectively, of G&G, Inc.The trusts *381 exercised no control over petitioners' dental practice. Gayle and Darryle made whatever decisions were necessary with regard to their wheat farming operations. Petitioners continued to live in their respective homes. The Gayle Trust paid and deducted various personal expenses of Gayle and his wife on its Forms 1041 for 1975 and 1976. These expenses included, but were not limited to, interest, insurance, utility and maintenance expenses on the personal residence of Gayle and his wife, and the leasing and maintenance of automobiles for them. The Darryle Trust paid and deducted personal expenses of Darryle and his wife on its Forms 1041 for 1975 and 1976. These expenses included, but were not limited to, items such as payments due on the automobiles they owned, the interest, taxes and expenses of upkeep for their personal residence, and the medical expenses for themselves and their children. It is clear that each set of petitioners at all times retained full control over the assets of the respective trusts, and as trustees of that trust, were empowered to "do anything any individual may legally do." After creation of each trust, the respective set of petitioners continued to *382 utilize the property which had been transferred to the trust for their own benefit and in exactly the same manner as it would have been used had the trust not been created. Each set of petitioners continued to carry out these activities in the same manner as they had before the creation of the respective trust. With respect to Gayle and Roberta, respondent made a number of determinations. Respondent determined that they should have reported on their own returns contract income and farming income in the net amounts of $ 29,265.33 and $ 47,651.25 for 1975 and 1976, respectively, which amounts were improperly reported by the Gayle Trust. Petitioners reported $ 19,080.00 and $ 32,594.54 in 1975 and 1976, respectively, as management and consulting fees received from the Gayle Trust and respondent reduced petitioners' taxable income by those amounts. Respondent also determined that they were taxable on dividend income from G&G, Inc. in the amounts of $ 16,758.75 and $ 1,777.86 paid for their benefit by G&G, Inc. for 1975 and 1976, respectively. Respondent disallowed the $ 5,232.50 allegedly paid to ESP for the trust package and deducted on their 1975 return as services for advice *383 on maintenance and conservation of income property. Respondent made a number of other adjustments for 1975 and 1976 such as disallowing deductions and adjusting depreciation and investment credits. With respect to Darryle and Patsy, respondent also made a number of determinations. Respondent determined that petitioners should have reported on their own returns contract and farming income in the net amounts of $ 36,878.94 and $ 48,569.99 for 1975 and 1976, respectively, which amounts were improperly reported by the Darryle Trust. Petitioners received $ 26,614.00 and $ 32,892.00 in 1975 and 1976, respectively, as management and consulting fees from the Darryle Trust and respondent reduced petitioners' taxable income by those amounts. Respondent also determined that they were taxable on dividend income from G&G, Inc. in the amounts of $ 15,158.75 and $ 1,777.86 paid for their benefit by G&G, Inc. for 1975 and 1976, respectively. Respondent disallowed the $ 3,322.50 allegedly paid to ESP for the trust package and deducted on their 1975 return as services for advice on maintenance and conservation of income property. Respondent made a number of other adjustments for 1975 and 1976 *384 such as disallowing deductions, and adjusting depreciation and investment credits. OPINION At the outset, we find it necessary to spell out some basic principles of proof. Petitioners contend in their brief that respondent did not meet "his burden of proof" at trial, referring to respondent's reference to section 482 in the notices of deficiencies. [4]Rule 142(a) of the Tax Court's Rules of Practice and Procedure provides that: "[T]he burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in his answer, it shall be upon the respondent." [5] These cases do not fall within any of the exceptions to the general rule. Thus, the burden is upon petitioners to prove that respondent's determinations are wrong. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). *385 We are doubly dismayed by the actions of these twin attempts to avoid proper taxation of income by the use of ESP family trusts. We do not know how often we must continue to drill home the point that the ABC's to be derived from our holdings in the cases cited below are that the arrangements reflected in ESP family trusts do not shelter a taxpayer from taxation. [6] We again sustain respondent's determinations for all the reasons set forth below. Petitioners ostensibly transferred their lifetime services and all their earned remuneration to the respective trust. Yet, petitioners disregarded the respective trust by paying themselves management and consulting fees from the respective trust. It is absurd to believe that petitioners considered these assignments valid. This is evidenced by the fact that it would have been ridiculous to have the trusts pay such fees to the respective petitioners if the assignments were valid because the fees should have been returned immediately *386 to the respective trust. See Ferguson v. Commissioner, T.C. Memo. 1982-251. Obvious disregard of our tax system is found in petitioners' attempts to use ESP family trusts to avoid taxation by having the trusts pay for personal, living and family expenses which are nondeductible under section 262. Our review of the record in each case compels us to conclude that each trust lacked economic substance, was a sham, and was a nullity for Federal income tax purposes for the reasons so carefully set forth in Markosian v. Commissioner, 73 T.C. 1235 (1980). [7] As the Court there stated,at 1241, even assuming the validity of each trust under State law, the trust in each case "cannot be recognized as a separate jural entity for Federal income tax purposes." Petitioners cannot contract away their liabilities for Federal income taxes nor can they anesthetize us to the fact that they tried to do so. The contract income attributed by respondent to each dentist *387 was income earned from his personal services rendered to G&G, Inc. Taxation of such income cannot be escaped by anticipatory arrangements assigning it to someone else. Lucas v. Earl, 281 U.S. 111 (1930). Time and time again, agreements similar to those used by petitioners have been found to be anticipatory assignments of income which did not shelter the taxpayer from taxation on his income, regardless of the effect of these assignments under State law. See, e.g. Vnuk v. Commissioner, T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner, 73 T.C. 1246 (1980); Wesenberg v. Commissioner, 69 T.C. 1005 (1978); Horvat v. Commissioner, T.C. Memo. 1977-104, affd. 582 F.2d 1282 (7th Cir. 1978). We add this case to the ever-growing list. We also observe that grantors of ESP family trusts repeatedly have been unable to escape taxation because of the grantor trust provisions of sections 671 through 677. See, e.g. Vnuk v. Commissioner, supra; *388 Vercio v. Commissioner, supra; Wesenberg v. Commissioner, supra; Snyder v. Commissioner, T.C. Memo. 1982-258; Basham v. Commissioner, T.C. Memo. 1980-545. We reach the same conclusion here. Each set of petitioners are taxable on the income of the respective trust since they retained the power to control it. In fact, it would be unrealistic to assume that anyone would transfer his lifetime services to an ESP family trust without having such control. Petitioners claim that each wife, as a trustee and holder of units of beneficial interest and as a natural guardian of her minor children, was an adverse party for purposes of sections 671 through 678. We do not agree. This Court has previously detailed why each set of petitioners were not adverse parties to each other. Vercio v. Commissioner, supra.The grantor trust provisions also sustain respondent's determinations. Although there was no proof that petitioners made the payments for the trust packages to ESP, other than the testimony of Gayle and Darryle, we shall assume arguendo that such payments were made by them. Gayle testified *389 that he was advised by an ESP representative, Paul Wallasa of Golden, Colorado, that the cost of the ESP trust package was deductible. Darryle apparently followed similar advice. They were ill advised. We find that the payments for the form trust instruments and related information were similar to the payments considered and ruled upon by this Court in Contini v. Commissioner, 76 T.C. 447 (1981). [8] We held that such payments were nondeductible personal expenses. The same determination in another case was recently upheld by the Eighth Circuit in Gran v. Commissioner, 664 F.2d 199 (8th Cir., Nov. 23, 1981), affirming per curiam a Memorandum Opinion of this Court. As in Contini, we have no evidence in the record concerning ESP's terms for providing legal representation or the extent to which petitioners received such assistance. Petitioners here are not entitled to a deduction under section 212 for all the reasons set forth in Contini. We find that petitioners have failed to prove that their payments to ESP were deductible under any section of the *390 Internal Revenue Code in 1975. We further find that these payments were nondeductible personal expenses under section 262. Epp v. Commissioner, 78 T.C. (May 12, 1982). Petitioners now claim in the alternative that the payments to ESP should be allowed as theft loss deductions for 1975 under section 165(c)(3). This argument is specious. Petitioners obtained exactly what they bargained for: that is, the ESP packages, which they used to create the trusts in order to divert taxable income from themselves to the trusts. It is our conclusion that petitioners sustained no theft losses in 1975 which meet the requirements of section 165. In fact, we find it difficult to conceive of a theft loss from the purchase of an ESP package. We agree with the statement in Harris v. Commissioner, T.C. Memo. 1981-46: "To anyone (and we *391 would include petitioners) not incorrigibly addicted to the 'free lunch' philosophy of life, the entire scheme had to have been seen as a wholly transparent sham." The record is clear that petitioners accepted the sugar-coated blandishments of the ESP representatives and "bought the 'pie in the sky' peddled by ESP." See Brown v. Commissioner, T.C. Memo. 1982-253. Aside from the self-serving testimony of Gayle and Darryle that the tax returns were correct, which we reject as unbelievable, there is no evidence in the record to prove that any of the adjustments made by respondent were incorrect. In other words, we find that petitioners have failed to meet their burden of proving that respondent's determinations were wrong. Welch v. Helvering, supra; Rule 142(a). Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable years, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of the Chief Judge, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. Both parties seemingly ignore the existence of G&G, Inc. in their arguments on the issues herein. Since we have no evidence of the arrangements between the Doctors and G&G, Inc., we will do likewise.↩
4. Since respondent did not rely on section 482 in the litigation of these cases, we will not mention it further other than to note that section 482 does not shift the burden of proof to respondent. ↩
5. Section 142(b) is not relevant since respondent has not asserted the addition to tax under section 6653(b) for fraud even though the notices of deficiency state that some of the adjustments are necessary to "prevent tax evasion." In light of respondent's action in similar cases, we observe that petitioners are fortunate that respondent did not at least assert the addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. E.g. Vercio v. Commissioner, 73 T.C. 1246 (1980); see Brown v. Commissioner, T.C. Memo. 1982-253; Broncatti v. Commissioner, T.C. Memo. 1981-452. The remaining subsections of Rule 142↩ are not relevant to these cases.
6. See Antonelli v. Commissioner, T.C. Memo. 1980-544; Basham v. Commissioner, T.C. Memo. 1980-545; and Corcoran v. Commissioner, T.C. Memo. 1980-546↩.
7. See e.g., Ferguson v. Commissioner, T.C. Memo. 1982-251; Neve v. Commissioner, T.C. Memo. 1981-39 and Antonelli v. Commissioner, supra↩.
8. See also, Brown v. Commissioner, T.C. Memo. 1982-253; Corcoran v. Commissioner, supra; Morgan v. Commissioner, T.C. Memo. 1978-401; Johnston v. Commissioner, T.C. Memo. 1978-121; and Shuman Equity Trust v. Commissioner, T.C. Memo. 1981-264↩.